WILLIAM N. CARY and EDWARD L. GAILOR, Appellants, *v.* THE HOME INSURANCE COMPANY, Respondent.

Third Department, December 28, 1921.

Insurance — marine insurance — action to recover for injuries to barge capsizing at pier — barge capsized shortly after part of cargo was shifted to permit unloading of another part — no proof that barge capsized because of perils of sea — failure to keep watchman on barge breach of warranty precluding recovery — complaint dismissed.

Recovery cannot be had under a policy of marine insurance insuring a barge " against the adventures and perils of the harbors, bays, sounds, seas, rivers and other waters " and excepting injuries or loss caused by " rottenness, inherent defects, and other unseaworthiness " and injuries caused by " want of ordinary care and skill in loading and stowing the cargo," for damages caused by the capsizing of the barge, where it appears that after the barge was loaded with 600 tons of steel bars, kegs of nails, nuts and hoop iron it was towed to a pier where it was tied up; that

thereafter about 40 tons of the cargo was shifted in order to get at another part thereof to unload; that no part of the cargo was unloaded; that shortly after the shifting of the cargo the barge was towed to and tied up at another pier; that it then showed a list to starboard and shortly after water had been pumped from the hold the cargo rolled over the starboard side causing the barge to capsize.

The only evidence that any other thing than the inherent unseaworthiness of the barge caused it to capsize was that in relation to the shifting of a part of the cargo which was performed in the course of "loading and stowing the cargo" and was itself an excepted risk.

Furthermore, the fact that there was no watchman on board for more than two hours immediately before the barge capsized was a breach of the warranty that the barge should "at all times have a competent watchman on board," which precludes a cause of action arising in favor of the plaintiff.

On all the evidence, *held*, that the dismissal of the complaint at the close of the plaintiff's case was proper.

JOHN M. KELLOGG, P. J., dissents, with opinion.

APPEAL by the plaintiffs, William N. Cary and another, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Albany on the 15th day of December, 1920, upon the dismissal of the complaint by direction of the court at the close of the plaintiffs' case.

*Brackett, Todd, Wheat & Wait* [*E. R. Shepard* and *B. P. Wheat* of counsel], for the appellants.

*Macklin, Brown, Purdy & Van Wyck* [*William Van Wyck* and *James M. Gorman* of counsel], for the respondent.

H. T. KELLOGG, J.:

This is an action to recover upon a marine policy of insurance for injuries to a vessel occasioned by its capsizing when moored to a wharf. The vessel was a barge, one hundred and fifteen feet over all by thirty-four feet beam. A cargo weighing six hundred tons was loaded upon its decks at Jersey City. The cargo consisted of steel bars, kegs of nails, nuts and hoop irons. The steel bars, which were round, were placed upon the decks running fore and aft. The rest of the cargo was piled on top of the bars. The barge was towed to pier No. 1, Bush Terminal, Brooklyn, where she was tied up alongside of a scow which was tied up alongside of a steamship. Men came aboard to unload a carload of her cargo for which

a bill of lading was held. In order to get at the carload thus billed it was necessary to lift off forty or fifty tons of iron which was lying on top thereof. This was moved from where it was piled thirty or forty feet towards the bow, but no part whatever of the cargo was then or thereafter unloaded. Subsequently the vessel was moved across the basin to pier No. 2, where it was tied up. That evening the captain went ashore to get his supper at a restaurant more than a mile away, and was gone for two hours. When he left the barge had some water in its hold and was listed to starboard. When he returned it was listing still more and had ten inches of water in its hold. The captain pumped her out and was on or about the barge for about an hour and a half. At the end of this period he heard the cargo rolling across the decks. He jumped ashore and the cargo rolled over the starboard gunwale into the water, thereby capsizing the vessel and causing the injuries complained of.

The policy insured the vessel " against the adventures and perils of the harbors, bays, sounds, seas, rivers and other waters." It did not insure against " rottenness, inherent defects, and other unseaworthiness." In *Berwind* v. *Greenwich Ins. Co.* (114 N. Y. 235) it was said that " in the policy in suit loss from unseaworthiness is among the excepted risks, and it was, therefore, incumbent upon the plaintiffs to show that the loss arose from some of the perils covered by the policy; and to make out their case some evidence was necessary from which the jury could infer that the sudden sinking of the boat was not due to defective structure or condition." In *Van Wickle* v. *Mechanics, etc., Ins. Co.* (97 N. Y. 350) it was said: " It cannot be said that a vessel, which, after a voyage of two or three hours, without encountering any danger or peril, sinks and disappears, was sound and seaworthy." There was no evidence in this case indicating that this vessel encountered any peril through grounding, collision, high waves or winds. The only proof that any thing other than inherent unseaworthiness caused it to capsize was that given in relation to the shifting of its cargo. The policy provided that " want of ordinary care and skill in loading and stowing the cargo of said vessel " was an excepted risk. The forty tons of iron which were shifted were not moved so that

they might be unloaded, but to uncover other iron for that purpose, and even that was not unloaded. The shifting done was, therefore, performed in the course of " loading and stowing the cargo of said vessel," and was itself an excepted risk. Consequently, the case was devoid of proof that perils of the sea insured against caused the vessel to capsize. Furthermore, the insured had expressly warranted that the vessel should " at all times have a competent watchman on board." This vessel had no watchman on board for more than two hours while its captain was at supper. The authorities definitely hold that such a warranty constitutes a condition precedent with which an insured must strictly comply in order to have a recovery. (*First National Bank of Ballston Spa* v. *Insurance Co. of N. A.*, 50 N. Y. 45; *Ripley* v. *Ætna Ins. Co.*, 30 id. 136.) As the proof that the warranty was broken is undisputed it is clear that no cause of action arose in favor of the plaintiff. For all these reasons the dismissal of the complaint was proper.

The judgment should be affirmed.

WOODWARD, COCHRANE and VAN KIRK, JJ., concur; JOHN M. KELLOGG, P. J., dissents, with an opinion.

JOHN M. KELLOGG, P. J. (dissenting):

The policy insured against the adventures and perils of the harbors, seas, rivers and other waters. It excepted from its provisions claims arising from the want of ordinary care and skill in loading and stowing the cargo and also from rottenness, inherent defects and other unseaworthiness. The words " and other unseaworthiness," following the words " rottenness, inherent defects," are limited in meaning by the rule of *ejusdem generis* to unseaworthiness arising from similar causes to those particularized. (*State Board of Pharmacy* v. *Gasau*, 195 N. Y. 197, 202.) Evidently this should be so, as any boat which sinks is unseaworthy at the time of sinking. Only the boat which is rotten and has inherent defects, or other similar causes of unseaworthiness, and sinks therefrom, is excepted from the policy. The mere fact that a boat sinks at a dock is not evidence in itself of unseaworthiness if there is any other possible cause for the sinking.

The exceptions in the policy of claims arising from want of ordinary care and skill in loading and stowing the cargo, are the words of the insurer and must be strictly construed against it. It is, therefore, apparent that claims arising from want of ordinary care in unloading or otherwise caring for the vessel are not excepted. Here the owner and master of the boat had nothing to do with the placing of it alongside of the scow, or with the attempt to remove a part of the cargo and changing the cargo in so doing. That was apparently the work of the longshoremen under the charge of the consignee who moved and took charge of the boat, for which quite probably the plaintiff may not be responsible. There was some reason in saying that the plaintiff warranted the loading and stowing of the cargo, but was not expected to warrant the unloading of the cargo. The loading and stowing is naturally under the control of the owner, or its officers, while the unloading of it and removal of its cargo are matters which, in this case at least, the plaintiff was not interested in. A peril of the harbor may result from the manner in which the boat is being unloaded, and from other causes. Boats were going in and out of the harbor in the immediate vicinity of this boat, and it does not appear that she might not have suffered injury therefrom. The boat was an ordinary brick barge. The cargo at the time was steel bars, kegs of nails and nuts, and hoop iron, about thirteen carloads, weighing about 600 tons, and it was well stowed and loaded. The boat was in good condition when the operation of unloading began. It had been changed by the consignee from pier to pier, and was taken from a pier and fastened to another boat. We cannot say what happened to it in the meantime. There was evidence here which would have justified the finding that the boat was properly loaded, the cargo properly stowed, but that the leak was caused by the manner in which the boat was being unloaded; that a change in the position of a part of the cargo in the process of unloading after it arrived at its destination, was the cause of the loss. The questions, therefore, as to whether the boat was unseaworthy, whether its loss arose from carelessness in stowing and loading the cargo, were questions of fact for the jury.

In my mind the serious question arises from the fact that

the captain left the boat unattended for about two hours, while he was gone to his supper. The insurer probably knew that this barge, for use in carrying brick, had not accommodations upon it for feeding the crew. It must have known that the watchman must get his meals away from the boat, and it was undoubtedly contemplated that he would be absent from the boat for a reasonable time for that purpose. The serious question is whether, as matter of law, it can be said that two hours was an unreasonable absence. It does not appear that the owner consented to or was a party to his absence for two hours. The warranty as to the watchman is peculiar in form. In the fore part of the policy is a warranty that when the vessel is laid up without a cargo it shall be in the charge of a competent watchman. This might imply that while it was at dock with a cargo, and in service, there was no necessity for a watchman. Later the policy provides that the boat at all times shall have a competent watchman on board. These two provisions should be read together and the real nature of the exception be ascertained by reconciling them so far as may be with the facts in a given case. Whether the absence of the watchman for two hours to get his supper was an unreasonable time might depend upon where the nearest supper was obtainable, and other circumstances. We cannot say as matter of law that it was a clear violation of the policy.

With some hesitation I favor a reversal and a new trial.

Judgment affirmed, with costs.