Jarvis Towing & Transportation Corporation et al., Respondents, *v.* Aetna Insurance Company et al., Appellants.

Argued October 12, 1948; decided November 24, 1948.

*Henry J. Bogatko* and *William M. Keegan* for appellants.
I. Defendants' insurance policy contained an express warranty that the plaintiffs would employ a competent watchman who would make frequent inspection of the bilges of the vessel, etc. No such watchman was provided. (*Cary* v. *Home Ins. Co.,* 199 App. Div. 122, 235 N. Y. 296; *Shamrock Towing Co.* v. *American Ins. Co.,* 9 F. 2d 57; *Ripley* v. *Aetna Ins. Co.,* 30 N. Y. 136; *United States Gypsum Co.* v. *Insurance Co. of North America,* 19 F. Supp. 767; *First Nat. Bank* v. *Insurance Co. of North America,* 50 N. Y. 45; *Levine* v. *Aetna Ins. Co.,* 139 F. 2d 217; *Kentucky Vermillion Mining & Concentrating Co.* v. *Norwich Union Fire Ins. Soc.,* 146 F. 695; *Craig* v. *United States Ins. Co.,* Fed. Cas. No. 3340; *Shuster* v. *National Sur. Co.,* 256 N. Y. 150; *Aetna Ins. Co.* v. *Houston Oil & Transport Co.,* 49 F. 2d 121; *Manheim Ins. Co.* v. *Tyner,* 142 Ky. 22.) II. Any contention that the presence on board of a competent engineer even though not a watchman was sufficient to prevent any casualty and therefore a compliance with the warranty is untenable for the reason that it is immaterial whether there is any causal connection between the breach of warranty and the cause of the loss. (*Ripley* v. *Aetna Ins. Co.,* 30 N. Y. 136; *United States Gypsum Co.* v. *Insurance Co. of North America,* 19 F. Supp. 767.) III. Respondents are in error in arguing that the engineer was a watchman. No watchman as required by the warranty was provided by the plaintiffs. (*First Nat. Bank* v. *Insurance Co. of North America,* 50 N. Y. 45.) IV. The employees of the Oceanic Service Corporation did no more than look at the tug which clearly was not a compliance with the warranty.

*Joseph K. Inness* for respondents. It is apparent from a reading of the warranty that it is vague, indefinite and ambiguous. It leaves to the plaintiffs the obligation of determining what are '' careful examinations '' of the tug, what are '' frequent intervals '' and what constitutes a '' competent '' watchman. Under such circumstances, the policy of insurance, having been drawn by the defendants, should be strictly construed against them. (*Aetna Ins. Co.* v. *Sacramento-Stockton S. S. Co.,* 273 F. 55; *National Bank* v. *Insurance Co.,* 95 U. S. 673; *Thompson* v. *Phenix Ins. Co.,* 136 U. S. 287; *Shamrock Towing Co.* v. *American Ins. Co.,* 9 F. 2d 57.)

DESMOND, J. Plaintiffs (two affiliated corporations which we shall call '' plaintiff '') were respectively, the actual owner and the demise charterer or '' chartered owner '' of the tug *American Eagle,* and, as such, brought this action to recover upon a marine hull insurance policy issued to them by defendants. The tug had sustained damage, from one of the perils insured against, when, while tied up for the night at a Brooklyn pier, in January, 1945, one of her stern planks was stove in by floating ice. The sole question is as to whether or not plaintiff proved compliance with this part of the policy: '' WARRANTED BY THE ASSURED that when this vessel is tied up or moored, it shall at all times be in charge of a competent watchman in the employ of the Assured, who shall make careful examination of the vessel throughout at frequent intervals, including inspection of the bilges.'' On the trial there was a jury verdict for plaintiff, judgment thereon being affirmed unanimously by the Appellate Division, whereupon we granted defendant leave to appeal to this court.

It is undisputed, and the trial court correctly instructed the jury, that the provision above quoted is an express promissory warranty, which must be literally complied with, and that noncompliance forbids recovery, regardless of whether the omission had causal relation to the loss (*Ripley* v. *Aetna Ins. Co.,* 30 N. Y. 136; *First Nat. Bank of Ballston Spa* v. *Insurance Co. of North America,* 50 N. Y. 45; *Cary* v. *Home Ins. Co.,* 199 App. Div. 122, affd. 235 N. Y. 296; *Snyder* v. *Home Ins. Co.,* 133 F. 848, affd. 148 F. 1021; *Shamrock Towing Co.* v. *American Ins. Co.,* 9 F. 2d 57, 60).

Plaintiff's testimony, accepted by the jury, shows that the tug had tied up at one of the several piers which make up plaintiff's Brooklyn terminal, late in the afternoon preceding the disaster. After the mooring, banking of fires and pumping of bilges had been attended to, as was usual every afternoon, the master and the fireman departed, leaving engineer Thomas, who customarily slept on board. Thomas was not instructed to, or expected to, act as a night watchman but was permitted to sleep on the tug. He left early in the evening to go to dinner and a theatre, returning about 10:00 P.M., at which time he looked at the lines, the boiler and the bilges, found everything in order, and then went to bed. When he awoke at 3:45 A.M., the tug was sinking.

Plaintiff had a contract or arrangement with Oceanic Service Company, a so-called "watching concern", by the terms of which the "day supervisor", and the "night supervisor" of that company were to keep plaintiff's tug under observation at all times during their respective tours of duty and to see that there was always steam up. Oceanic Service Company, with a considerable force of patrolmen, furnished police and watchman service for the piers at one of which the *American Eagle* tied up every afternoon after her day's work. The patrolmen had no duties in connection with watching the tug, but their supervisors, one during the day and the other at night, were stationed, or made their rounds, at points where the tug was in plain view nearby. Both supervisors testified that the tug when tied up, was at all times in full view of the supervisor on duty. But there is no testimony that these supervisors were ever instructed to go on board the tug for inspection purposes or that they were under orders to do anything more than keep the vessel in sight and notify plaintiff or notify engineer Thomas, if anything seemed amiss. When engineer Thomas went ashore on the evening before the sinking, he notified the day supervisor of his departure, and the day supervisor communicated the fact to the night supervisor when the latter reported for duty that night.

On the proof above summarized, we are to determine whether there was full and literal compliance with each of the several demands of the warranty, which, for convenience, we divide into two groups, as follows:

1. Whenever tied up or moored, the tug was to be in charge of a competent watchman, in the employ of the assured.

2. The watchman was to make careful examination of the vessel throughout at frequent intervals, including inspection of the bilges.

Without further discussion, we assume that requirement No. 1 above was met (see *Aetna Ins. Co.* v. *Houston Oil & Transport Co.*, 49 F. 2d 121, 124, certiorari denied 284 U. S. 628). Not so, however, with No. 2. That part of the warranty promised that the watchman in charge would make frequent examinations of the vessel, throughout and including the bilges. But on neither of these supervisors had there been put by plaintiff any duty of boarding the vessel, much less looking into the bilges. To examine " throughout " means to examine every part, a meaning which is inescapable here because of the express reference to inspection of the bilges. A " throughout " examination, including an actual inspection of the bilges, could not be carried out by a supervisor who merely looked at the tug from his vantage point on the pier. Witness Kelly, in charge of these matters for plaintiff, testified that supervisors Donlin and Buckley were the watchmen. But all of the proof shows that these men never were hired or instructed to make " throughout " examinations or bilge inspections, and that they never did make any. Nor does it help plaintiff if we add engineer Thomas' activities to those of the supervisors. The same witness Kelly told the jury that engineer Thomas was not supposed to be the watchman, and not supposed to keep watch. That in itself was enough to eliminate Thomas from consideration as a watchman within the policy terms (see *First Nat. Bank of Ballston Spa* v. *Insurance Co. of North America, supra,* 50 N. Y. at pp. 48–49). But the plain fact here is that, when the tug was tied up, Thomas did not maintain any regular watch, or make " careful examination of the vessel throughout at frequent intervals, including inspection of the bilges ", nor did anyone else do so. " The only question in such cases is whether the thing warranted to be performed was or was not performed " (*Shamrock Towing Co.* v. *American Ins. Co., supra,* 9 F. 2d at p. 60). Here the warranty was not complied with, and so the suit must fail.

The judgments should be reversed, and the complaint dismissed, with costs in all courts.

Loughran, Ch. J., Lewis, Conway, Dye and Fuld, JJ., concur.

Judgments reversed, etc.