### RED TOP BREWING CO. v. MAZZOTTI et al.

United States District Court
S. D. New York.
April 28, 1952.

Harry Malter, and Gallop, Climenko & Gould, New York City, by Milton S. Gould, New York City, for plaintiff.

Mendes & Mount, New York City, by Walter B. Hall, New York City, for defendant.

BONDY, District Judge.

Defendants move to set aside the verdict of the jury and for judgment dismissing the complaint on the grounds that as a matter of law plaintiff is not entitled to relief.

The action was brought to recover upon two marine insurance policies covering 6,000 bags of cassava meal on a voyage of the S. S. Vitorialoide from Pernambuco, Brazil to New York. The policies insured against any loss due to condemnation by the United States Pure Food and Drug Administration. The goods were condemned upon arrival by that agency on account of excessive insect infestation. Defendant contends that there was a breach of the following warranty in the policies which bars recovery:

"Warranted Brazilian Department Agriculture and/or Lloyd's and/or Board Underwriters of New York and/or Sociedad Brasiliera de Superintendencia de Embarques e Descargas. Limitada certificate issued immediately prior shipment specifying merchandise is clean, free of foreign matter and insects, edible and fit for human consumption and such certificate shall be deemed Underwriters admission sound condition."

On June 28, 1946, one day before the goods were shipped, two certificates were issued by departments of the Brazilian government relating to the goods.

Certificate of Classification No. 11,522 was issued by the Brazilian Department of Agriculture's Classification Service of Raw Materials and Food Products. When originally issued and at the time of shipment, it did not contain any description of the condition of the goods but merely described them as 6,000 sacks of "farinha de mandioca" of a specified weight. The inspection which was made by the classification service consisted only in visually observing samples from each sack, and feeling and smelling them. There was testimony by the deposition of the chief of

the classification service that if the goods had not been found fit for human consumption, the certificate would have been marked to so indicate, and that therefore the certificate certifies that the goods were found fit for human consumption. In December, 1947, 18 months after the shipment had been made, upon the request of an "interested party", there were added to Certificate No. 11,522 words in Portuguese, translated as follows: "Note: Clean Manioc (cassava) flour, free of foreign matter and insects, edible and suitable for human consumption." The official who inspected the goods for the classification service stated in his deposition that the inspection showed the goods to be as described in the note which was subsequently added, clean, free of foreign matter and insects, edible and fit for human consumption.

Certificate of Origin and Public Health No. 347 was issued by the Official Bureau for the Protection of Vegetables of the Brazilian Department of Agriculture, which conducts microscopic examinations. It stated in Portuguese translated as follows: "The undersigned Chief of the Station for Vegetable Health Protection in the port of Recife-Pernambuco, Brazil, herewith certifies in accordance with the results of the inspection of the original cultivations, of the inspection of the products included in the shipment, that the vegetables or parts of the vegetables contained in the shipment described below are considered as free from dangerous plagues or diseases and especially from those set forth below." And thereunder, below the heading "Description of the Shipment", it is stated: "Description of the vegetables or parts of vegetables: Manioc (cassava) flour for human consumption." A supervisor in the classification service, and the official who inspected the goods for the classification service stated in their depositions that this meant that the flour inspected was fit for human consumption. There is not any testimony of any official of the Official Bureau for the Protection of Vegetables which issued Certificate No. 347.

These policies were policies of marine insurance. Before the insurance contract was entered into, the insurer was advised that the goods were not susceptible to insects. Thereafter it required a warranty that a certificate had issued specifying not only that the goods were fit for human consumption, but in addition that they were clean, free of foreign matter and free of insects before shipment. This would have been received as conclusive evidence that the insect infestation took place on the voyage. The risk insured against was accordingly that of insect infestation during the voyage. Since that was a risk related to transportation on the seas, N.Y.Insurance Law, McKinney's Consol. Laws, c. 28, Sec. 150 does not apply. Levine v. Aetna Ins. Co., 2 Cir., 139 F.2d 217; see Blair v. National Security Ins. Co., 3 Cir., 126 F.2d 955, 958. The marine rule, which controls here, is that warranties must be literally complied with. Levine v. Aetna Ins. Co., supra; Shamrock Towing Co. v. American Ins. Co., 2 Cir., 9 F.2d 57, 60; Jarvis Towing & Transportation Corp. v. Aetna Ins. Co., 298 N.Y. 280, 82 N.E.2d 577.

The warranty required the certificate to specify that the goods were clean, free of foreign matter and insects, as well as edible and fit for human consumption. To "specify" is "to mention specifically; state in full and explicit terms; name expressly or particularly", Funk & Wagnall's New Standard Dictionary, p. 2332 (1949); "to mention or name in a specific or explicit manner; to tell or state precisely or in detail", Webster's New International Dictionary, p. 2005 (1934); see also 58 C.J. 1284. It would be doing violence to the plain meaning of the words used in the insurance policies to find compliance with the warranty by a certificate which did not clearly certify to all the expressly required conditions of the goods.

Although it may not have been required that the certificate contain the precise wording of the warranty any more than that it had to be in English rather than in Portuguese, the certificate was required to clearly set forth the condition of the goods

in compliance with the warranty, without the use of extrinsic evidence.

That the Brazilian authorities were requested to add to Certificate 11,522 the specific words of the warranty is some indication that even plaintiff, or parties related in interest to plaintiff, were not certain that they could rely upon a certificate not setting forth the condition required.

 Certificate No. 11,522 contained nothing whatsoever about the condition of the goods, at the time it was issued or when the goods were shipped. Certificate No. 347 describes the goods as "for human consumption." Plaintiff urges that that means "fit for human consumption". However, even if it is read to mean that, there is nothing in that certificate which could be interpreted to mean freedom from insects and foreign matter. There is no proof that fitness for human consumption includes freedom from insects and foreign matter. The printed statement in Certificate No. 347 that the goods are free from dangerous plagues and diseases did not purport to establish that they were clean and free of any insect infestation or of foreign matter at the time of shipment.

The motion to set aside the verdict and for judgment in favor of defendant dismissing the complaint is granted.