**Joseph N. CUNNINGHAM, Jr., M.D., Plaintiff,**

v.

**INSURANCE COMPANY OF NORTH AMERICA and Christi Insurance Group, Inc., Defendants.**

No. 04 CV 2997(RJD)(VVP).

United States District Court, E.D. New York.

Aug. 31, 2006.

Opinion on Reconsideration Sept. 28, 2007.

Barry Glenn Saretsky, Allen Leonard Sheridan, Saretsky Katz Dranoff & Glass LLP, New York, NY, for Plaintiff.

Matthew Tracy, Winget, Spadafora & Schwartzberg, LLP, New York, NY, for Defendants.

## MEMORANDUM & ORDER

DEARIE, District Judge.

Plaintiff Joseph Cunningham sues Insurance Company of North America (INA) for failing to compensate him after his fifty-foot fishing vessel was destroyed by fire. Plaintiff also sues his insurance broker, Christi Insurance Group, for malpractice, negligence, and breach of contract. Defendants move for summary judgment. The Court referred the motion to Magistrate Judge Pohorelsky for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). On April 27, 2006, Judge Pohorelsky recommended that both summary judgment motions be granted. For the following reasons, the Court grants INA's motion for summary judgment but on somewhat different grounds than stated in the Report. The Court also agrees with Judge Pohorelsky that Christi is entitled to summary judgment on plaintiff's breach of contract claim.[1] Christi's motion for summary judgment on plaintiff's negligence claim, however, is denied.

## BACKGROUND

The following facts are not in dispute. Defendant Christi Insurance Group obtained insurance for plaintiff's fishing vessel from INA. The policy became effective on April 17, 1998, and was renewed each year until April 17, 2004. *Id.* ¶ 18. On March 11, 2004, the vessel was destroyed by fire. INA denied coverage because it claimed plaintiff had failed to lay up his vessel ashore from December to April as required by the policy. The policy states that "[i]f the ... Lay–Up Warranty [is] breached voluntary [sic] there shall be no coverage under this policy without both prior notice to us and approval by us." Policy at 7; Mercante Aff. Ex. 2.

Plaintiff filed this action on July 15, 2004. He alleges that INA breached its contract by denying his insurance claim, or that, in the alternative, Christi is liable for failing to procure an adequate policy. Magistrate Judge Pohorelsky concluded that because plaintiff repeatedly violated the lay-up warranty he was not entitled to coverage under the INA policy. Judge Pohorelsky also determined that plaintiff's claim is untimely.

---

1. Plaintiff does not object to Judge Pohorelsky's determination that the malpractice

claims against Christi are barred by the applicable statutes of limitation.

## DISCUSSION

### A. Standard for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." *White v. ABCO Eng'g Corp.*, 221 F.3d 293, 300 (2d Cir. 2000) (quoting *Taggart v. Time, Inc.*, 924 F.2d 43, 46 (2d Cir.1991)). The court must draw all inferences from the underlying affidavits, exhibits, and depositions "in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir.1995). If, after drawing such inferences, the court finds that an issue of material fact remains, the motion for summary judgment must be denied.

### B. Claims Against INA

■ Magistrate Judge Pohorelsky did not reach the question of whether plaintiff was in breach of the lay-up warranty at the time of the fire. Instead, Judge Pohorelsky ruled that because plaintiff unquestionably and frequently violated the lay-up warranty before the date of the fire, he forfeited coverage under the insurance policy. The New York Court of Appeals and the Second Circuit have made clear, however, that insurers must explicitly and clearly indicate that a breach permanently ends coverage if that is their intention. *See Henjes v. Aetna Ins. Co.*, 132 F.2d 715, 719 (2d Cir.1943) (explaining that had the defendant insurers intended a breach to end coverage "they should have made that convincingly clear"); *Smith v. Northwestern Fire & Marine Ins. Co.*, 246 N.Y. 349, 361, 159 N.E. 87 (1927) (noting that if an insurer intends a breach to trigger more than a mere suspension of the policy, "there must be an express provision that the effect of any breach shall be to end the policy forever.").

■ Defendant's policy contains no such explicit language. It states that if the lay-up warranty is breached there "shall be no coverage under this policy without both prior notice to us and approval by us." Policy at 7; Mercante Aff. Ex. 2. At a minimum, this provision means that during a breach of the lay-up warranty, plaintiff would not be covered for any damage to the boat, but it does not clearly state that a breach results in a permanent loss of coverage. Indeed, in its response to plaintiff's objections, defendant INA primarily contends that plaintiff was in breach of the lay-up warranty at the time of the fire. *See* Def. Resp. at 3.

■ The key question then is whether plaintiff's vessel was in breach of the lay-up warranty when the fire occurred. Plaintiff was required to lay up his vessel "ashore" from December to April.[2] It is undisputed that the vessel was in the water at the time of the fire, but plaintiff asserts that the term "ashore" does not necessarily require the vessel to be on

---

**2.** Plaintiff argues that the provision requiring that the vessel be laid up ashore is not a warranty. The Court disagrees. The ashore requirement "has the effect of requiring . . . the existence of a fact which tends to diminish . . . the risk of the occurrence of any loss damage, or injury," in accordance with the definition of a "warranty" under New York Insurance Law § 3106. Furthermore, at the top of the relevant section are the words "Lay-up Warranty." *See* Policy Declarations Page; Mercante Aff. Ex. 3.

land. It is true that "ashore" can sometimes mean "to or toward the water", but this directional definition makes no sense in the context of laying up a vessel. The word, as it is used in the contract, unambiguously means "on land" or the opposite of "afloat." Otherwise, there would be no point in specifying that the boat needed to be "ashore" when it was laid up. *See Alexander & Alexander Servs. v. These Certain Underwriters at Lloyd's,* 136 F.3d 82, 86 (2d Cir.1998) ("An ambiguity exists where the terms of a contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.") (internal quotation marks omitted).

Indeed, plaintiff even indicated at his deposition that he understands "ashore" to mean out of the water:

Q .... The loss occurred when you were in the water, correct?

A Right.

Q So we can agree it wasn't ashore?

A Right.

Cunningham Dep. at 71; Mercante Aff. Ex. 9. In addition, plaintiff asserts in the complaint that the yacht club where his vessel was docked "did not have the facilities or equipment necessary to remove ... the Vessel from the water to be laid up ashore." Am. Compl. ¶ 15. Plaintiff's present argument that he satisfied the ashore requirement by merely having his vessel close to the shore is therefore disingenuous. Plaintiff was in breach of the lay-up warranty at the time of the fire.

■ Plaintiff argues that even if he was in breach of the warranty, his breach was not material to the loss of the boat. New York courts, however, have long held that breaches of marine insurance contracts—even ones relating to lay-up or docking requirements—need not be material in order for the insurer to disclaim coverage. The Second Circuit in *Gelb v. Automobile Ins. Co.,* 168 F.2d 774 (2d Cir.1948), for example, addressed a contract provision requiring that plaintiff's yacht be "laid up and out of commission" for certain months. *Id.* at 775. The court held that under New York law "proof of a causal relation is not required where there has been such a breach of a warranty in a marine policy." *Id.* at 76; *see also Jarvis Towing & Transp. Corp. v. Aetna Ins. Co.,* 298 N.Y. 280, 282, 82 N.E.2d 577 (1948) (holding that a provision requiring a watchman to examine a vessel when it was moored was an "express promissory warranty, which must be literally complied with, and that noncompliance forbids recovery, regardless of whether the omission had causal relation to the loss").

In addition, New York Insurance Law § 3106(c) exempts marine insurance contracts from the general rule that a breach of a warranty must be material in order for the insurer to disclaim coverage. *See Commercial Union Ins. Co. v. Flagship Marine Servs.,* 190 F.3d 26, 32 (2d Cir. 1999). Plaintiff argues that § 3106(c) is inapplicable because the lay-up warranty does not pertain to "risks or perils of navigation, transit, or transportation." Pl. Mem at 50. However, the purpose of the lay-up warranty is to avoid the risks of transit during the winter months. *See N.H. Ins. Co. v. Dagnone,* 394 F.Supp.2d 480, 486 (D.R.I.2005) ("The Lay–Up Warranty ... is a warranty in a marine insurance policy that pertains to a risk of navigation, transit or transportation. Consequently, New York law forecloses any coverage ... if [plaintiff] was in breach of the Lay–Up Warranty at the time of the accident, irrespective of the relation between the breach and the dam-

age."). INA's motion for summary judgment is granted.

## C. Claims Against Christi Insurance Group, Inc.

The Court agrees with Judge Pohorelsky's determination that plaintiff's breach of contract claim is barred by the applicable statute of limitations, but it concludes that plaintiff's negligence claim is timely.

### 1. Plaintiff's Breach of Contract Claim

■ Insurance agents and brokers are not professionals under CPLR 214(6), see *Chase Scientific Research, Inc. v. NIA Group, Inc.*, 96 N.Y.2d 20, 31, 725 N.Y.S.2d 592, 749 N.E.2d 161 (2001); therefore, under CPLR 213(2), a six-year statute of limitations applies to plaintiff's breach of contract actions, see *Price v. J & H Marsh & McLennan, Inc.*, No. 03 CV 292, 2003 WL 24334430, **3-4, 2004 U.S. Dist LEXIS 12601, at *9 (D.Vt.2004). In order to be timely, the cause of action for breach of contract must have accrued less than six years before July 15, 2004, the date plaintiff filed this action.

■ Under New York law, a "breach of contract cause of action accrues at the time of the breach," *Ely–Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399, 402, 599 N.Y.S.2d 501, 615 N.E.2d 985 (1993), and "knowledge of the occurrence of the wrong on the part of the plaintiff is not necessary to start the Statute of Limitations running in a contract action," *id.* at 403, 599 N.Y.S.2d 501, 615 N.E.2d 985 (internal quotation marks and alterations omitted); see also *T & N PLC v. Fred S. James & Co.*, 29 F.3d 57, 60 (2d Cir.1994). Plaintiff makes clear in his complaint that the alleged breach is Christi's failure "to procure adequate, suitable, valid and binding insurance for [plaintiff] covering the Vessel." Compl. ¶ 68. Although plaintiff

suggests that he was never sent a copy of the policy, he does not dispute that the coverage was procured in April or May 1998 or that the policy was issued in early May 1998. Pl. Objs. at 24. As a result, his breach of contract claim is time barred regardless of whether he knew in May 1998 that the policy did not provide his desired coverage.

■ Plaintiff also asserts that there was a new contract each year on April 17, but the complaint makes clear that the initial contract was simply renewed each year with no discussions between Christi and plaintiff. Compl. ¶ 18 ("The INA policy was ... renewed on an annual basis ..."). "[A]nnual renewals, effected with no further discussions between plaintiff and the broker ... constitute only new instances of damage, and are therefore, irrelevant for limitations analysis." *Hudson Envelope Corp. v. Klausner*, 249 A.D.2d 31, 670 N.Y.S.2d 104 (App.Div. 1998). Plaintiff also argues that Christi had an ongoing "duty" under the contract, but "[u]nder New York law ... the continuous treatment doctrine does not apply to insurance brokers and agents." *One Beacon Ins. v. Terra Firma Constr. Mgmt*, No. 02 Civ. 7492, 2004 WL 369273, *3, 2004 U.S. Dist. LEXIS 2948, at *10 (S.D.N.Y. Feb 26, 2004); see also *Chase Scientific Research, Inc. v. NIA Group. Inc.*, 96 N.Y.2d 20, 20, 725 N.Y.S.2d 592, 749 N.E.2d 161 (2001). As was the case in *T & N*, "[t]he essence of [plaintiff's] claims is that [defendant] breached its duty to obtain adequate insurance coverage. The record does not suggest that [defendant] was under continuing duty to assure that [plaintiff's] coverage was satisfactory." *T & N*, 29 F.3d at 60.

### 2. Plaintiff's Negligence Claim

■ Under CPLR § 214(4), the applicable statute of limitations for negligence

is three years. *See Chase Scientific,* 96 N.Y.2d at 31, 725 N.Y.S.2d 592, 749 N.E.2d 161 (2001). Plaintiff claims that under New York law the accrual date of his negligence claim is March 11, 2004 (the date of the fire); Christi asserts that the accrual date is in the spring of 1998 when it procured insurance for defendant. Several New York Appellate Division and federal district courts have held that "[i]n negligence claims against insurance brokers for failure to procure adequate insurance coverage ... the cause of action accrues when the broker fails to procure adequate coverage." *Price v. J & H Marsh & McLennan, Inc.,* No. 03 CV 292, 2004 WL 3202764, \*\*3–4, 2004 U.S. Dist LEXIS 12601, at \*7–8 (D.Vt. June 8, 2004); *see also One Beacon,* 2004 WL 369273, at \*3, 2004 U.S. Dist. LEXIS 2984 at \*9 (holding that negligence claims "against an insurance broker accrue[ ] when the wrongdoing occurs and not when the wrongdoing is discovered"); *Mauro v. Niemann Agency,* 303 A.D.2d 468, 468, 756 N.Y.S.2d 611 (App.Div.2003); *Morse Diesel Int'l v. CNA Ins. Cos.,* 272 A.D.2d 455, 707 N.Y.S.2d 499 (App.Div.2000). However, at least two Appellate Division cases have held, albeit with little discussion, that the accrual date is when plaintiff suffers a loss or when the insurance company denies coverage. *See Lavandier v. Landmark Ins. Co.,* 26 A.D.3d 264, 810 N.Y.S.2d 45, 46 (App.Div.2006) (holding that "negligence claim [against insurance broker] accrued not at the time of the alleged breach of duty but, subsequently, at the time of injury, i.e., ... when [the insurance company] disclaimed"); *Venditti v. Liberty*

*Mut. Ins. Co.,* 6 A.D.3d 961, 774 N.Y.S.2d 849, 850 (App.Div.2004).

Neither party has cited to a New York Court of Appeals or Second Circuit opinion that provides an unequivocal answer.[3] However, the Court finds that *Kronos, Inc. v. AVX Corp.,* 81 N.Y.2d 90, 595 N.Y.S.2d 931, 612 N.E.2d 289 (1993), provides the clearest guidance. The Court of Appeals ruled that for tortuous inducement by a third party the accrual date is when "an injury is sustained ... rather than the wrongful act of defendant or discovery of the injury." The court stated that "accrual occurs when the claim becomes enforceable, i.e., when all elements of the tort can be truthfully alleged in a complaint," and that "since damage is an essential element of the tort, the claim is not enforceable until damages are sustained." *Id.* at 94, 595 N.Y.S.2d 931, 612 N.E.2d 289. This reasoning applies equally to a claim of negligence; according to the Second Circuit, under New York law plaintiff must demonstrate damages in order to establish a prima facie case of negligence. *See Williams v. Utica College of Syracuse Univ.,* 453 F.3d 112, 116 (2d Cir.2006). Plaintiff's negligence claim is therefore timely whether the damages arose on the date of the fire or when INA disclaimed coverage.

The New York Court of Appeals has held that "where a party is merely seeking to enforce its bargain, a tort claim will not lie." *New York Univ. v. Continental Ins. Co.,* 87 N.Y.2d 308, 316, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995). Although plaintiff asserts many of the same facts for both his tort and breach of contract claims, he does

---

**3.** For example, in *Chase Scientific Research, Inc. v. NIA Group. Inc.,* 96 N.Y.2d 20, 725 N.Y.S.2d 592, 749 N.E.2d 161 (2001), the New York Court Appeals considered two Appellate Division opinions. The parties in one case had agreed that the date of the accrual would be the date of the damage. *Id.* at 31,

725 N.Y.S.2d 592, 749 N.E.2d 161. In the other matter, the court upheld the dismissal of plaintiff's negligence claim, but both the procurement of coverage and the relevant accident occurred more than three years before plaintiff filed his claim.

allege certain conduct that is distinct from defendant's contractual obligations. The New York Court of Appeals has held that "insurance agents have a common-law duty to obtain requested coverage for their clients within a reasonable time or inform the client of the inability to do so." *Murphy v. Kuhn,* 90 N.Y.2d 266, 270, 660 N.Y.S.2d 371, 682 N.E.2d 972 (1997). Plaintiff claims that defendant misled him into believing that there would be no lay-up requirement, altered his insurance application after he had signed and submitted it, and failed to alert him that he was not allowed to use the boat all months of the year. These are triable issues of fact and, as a result, the Court denies Christi's motion for summary judgment on plaintiff's negligence claim.

### Conclusion

Although on somewhat different grounds, the Court agrees with Magistrate Judge Pohorelsky's recommendation that INA's motion for summary judgment be granted. The Court also grants Christi's motion for summary judgment on plaintiff's breach of contract claim, but denies its motion for summary judgment on plaintiff's negligence claim.

SO ORDERED.

### MEMORANDUM & ORDER

DEARIE, Chief Judge.

### BACKGROUND

Plaintiff Joseph Cunningham brings suit against Insurance Company of North America ("INA") and Christi Insurance Group, Inc. ("Christi"), alleging breach of contract, negligence, and malpractice. On January 23, 2006, the Court referred defendants' motions for summary judgment to Magistrate Judge Viktor V. Pohorelsky

for Report & Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). On April 27, 2006 Magistrate Judge Pohorelsky issued a Report & Recommendation ("Report"), recommending that INA's motion for summary judgment be granted based upon plaintiff's breach of the "lay-up clause" of his insurance contract, and that Christi's motion be granted on the ground that plaintiff's claims against it were time-barred. After both sides submitted memoranda in response, on August 31, 2006, the Court issued a Memorandum & Order ("Order") granting INA's motion on grounds slightly different from those articulated in the Report, adopting the Report's recommendation that plaintiff's contract claims against Christi be dismissed, and denying summary judgment on plaintiff's negligence claims against Christi.[1] Christi now moves for reconsideration pursuant to Fed.R.Civ.P. 59(e), claiming that the plaintiff should be presumed to have read and understood his insurance policy and consequentially be barred from bringing the remaining claims. For the reasons explained below, the Court grants the motion for reconsideration, but affirms its denial of Christi's motion for summary judgment with respect to plaintiff's negligence and malpractice claims.

### DISCUSSION

#### A. Reconsideration

■ Plaintiff contends that Christi waived reconsideration of the presumption issue by failing to reiterate that argument in response to the Report. This contention is without merit. The reviewing standard for a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that

---

1. Although the Order did not specifically address the plaintiff's malpractice claim, it is hereby noted that that claim has also survived.

the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.* 70 F.3d 255, 257 (2d Cir.1995). Plaintiff's attempt to analogize between this case and others in which courts have denied appellate review of the rulings of Magistrate Judges on timeliness grounds is not persuasive. Christi does not seek to take a second bite at the apple by contesting this Court's ruling on the timeliness of plaintiff's negligence claim. Instead, Christi asks the Court to consider its presumption defense—an issue originally asserted in Christi's motion for summary judgment but not addressed in the Court's Order. The motion for reconsideration does not "advance new facts, issues, or arguments not previously presented to the Court." *Nat'l Union Fire Ins. Co. v. Stroh Cos.,* 265 F.3d 97, 115 (2d Cir.2001). Because a ruling for Christi on this issue "might reasonably be expected to alter the conclusion reached by the court," reconsideration is warranted.

## B. Choice of Law

As noted above, Magistrate Judge Pohorelsky's Report recommended summary judgment for Christi with regard to plaintiff's negligence claim on procedural (statute of limitation) grounds. Report & Recommendation 15–19. As a result, neither the Report, nor this Court's Order adopting that Report, determined which state's law would govern such an analysis. The Court therefore must address the choice of law issue at this time.

When determining what law to apply in cases arising under diversity jurisdiction, federal courts follow the choice of law rules prevailing in the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 494, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). "The first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved." *In re Allstate Ins. Co.,* 81 N.Y.2d 219, 223, 597 N.Y.S.2d 904, 613 N.E.2d 936 (1993). Christi argues for the application of New York law, under which it claims that there is "a conclusive presumption that an insured has read and understood [its] insurance policy." Def.'s Mem. Supp. Mot. Recons. 5. Plaintiff responds by urging the Court to apply New Jersey law, under which it claims that no such presumption exists, and in the alternative contests defendant's reading of New York law. The Court finds that the "conclusive presumption" cited by Christi does not apply under the facts of this case. Therefore, the result of Christi's motion is the same under New Jersey and New York law and summary judgment is denied.

### 1. New Jersey Law

New Jersey's Comparative Negligence Act allows a trier of fact considering a negligence claim to take the plaintiff's negligence into account. N.J. Stat. Ann. § 2A:15–5.2. In *Aden v. Fortsh,* the New Jersey Supreme Court applied the Comparative Negligence Act to insurance brokers, holding that:

> the comparative negligence defense is unavailable to a professional insurance broker who asserts that the client failed to read the policy and failed to detect the broker's own negligence. It is the broker, not the insured, who is the expert and the client is entitled to rely on that professional's expertise in faithfully performing the very job he or she was hired to do.

169 N.J. 64, 69–70, 776 A.2d 792 (2001). In that case, the New Jersey Supreme Court interpreted the state's Comparative Negligence Act "to apply to the conduct of

victims of professional malpractice ... only to the extent that such conduct substantially contributed to the defendant's nonperformance." *Id.* at 83, 776 A.2d 792. New Jersey's "tradition of holding insurance professionals to high standards of care confirms its strong public policy focus on protecting parties who deal with such professionals." *Highlands Ins. Co. v. Hobbs Group, LLC,* 373 F.3d 347, 354 (3d Cir.2004). The foregoing confirms the absence, under New Jersey law, of a presumption of responsibility sufficient to preclude a plaintiff's negligence action from reaching a trier of fact. Thus, under New Jersey law, Christi would not be entitled to judgment as a matter of law.

## 2. New York Law

■ New York courts, by contrast, do recognize a presumption that an insured who has received a policy has read and understood it. However, this presumption does not automatically apply where wrongful conduct has been alleged against the insurer. In *Metzger v. Aetna Ins. Co.,* a case concerning an insurance policy, the New York Court of Appeals held that "[h]e who signs or accepts a written contract, *in the absence of fraud or other wrongful act on the part of another contracting party,* is conclusively presumed to know its contents and to assent to them." 227 N.Y. 411, 416, 125 N.E. 814 (1920) (emphasis added). The *Metzger* court went on to note that "[t]here are exceptions to the general rule" and cite numerous examples thereof. One of those cases, *Hay v. Star Fire Ins. Co.,* held that "negligence of plaintiff in not discovering [a change of terms], and laches in not sooner seeking relief were questions making the propriety of granting the relief discretionary." 77 N.Y. 235, 236 (1879).

In addition to insureds and insurers, New York courts have also applied the presumption to insurance brokers. In *Rotanelli v. Madden,* a court of the New York Appellate Division overturned a lower court's denial of a defendant insurance broker's motion to dismiss. That court found that because plaintiff was presumed to have read his insurance policies, he could not claim to have relied upon an allegedly negligent statement by the defendant regarding the extent of plaintiff's coverage. 172 A.D.2d 815, 569 N.Y.S.2d 187 (1991). In *Busker on the Roof Ltd. Partnership Co. v. Warrington,* another Appellate Division court found that:

> [p]laintiff received the subject policy months before the accident at issue, and is conclusively presumed to have known, understood and assented to its terms, and, accordingly, has no action against its insurance broker for having procured such coverage, even though the coverage was not entirely in accord with what plaintiff had requested.

283 A.D.2d 376, 725 N.Y.S.2d 45 (App.Div. 2001); *see also McGarr v. The Guardian Life Ins. Co. of Am.,* 19 A.D.3d 254, 799 N.Y.S.2d 19, 21 (App.Div.2005) (holding that an insured is "presumed to have read and understood his policy").

■ Nevertheless, New York courts have also noted and applied exceptions to the presumption with regard to insurance brokers—several of which are relevant to the case at hand. In *Kyes v. Northbrook Property and Casualty Insurance Co.,* the Appellate Division found that plaintiff's alleged reliance upon statements by his insurance agent "could, under the appropriate circumstances, supercede what the trial court deemed to be his 'conclusive presumptive knowledge of the terms and limits of the policy,'" and went on to overrule the trial court's granting of summary judgment to the defendant for that reason. 278 A.D.2d 736, 717 N.Y.S.2d 757, 759 (App.Div.2000). *See also Reilly v. Progressive Ins. Co.,* 288 A.D.2d 365, 733 N.Y.S.2d 220 (App.Div.2001) (holding

that "[c]ontrary to the appellant's contentions, in a case such as this, where the insureds allegedly made an explicit request for a specific amount of coverage, the mere fact that the plaintiffs had ample time yet failed to read the policy to discern the actual liability limit of the lesser of the stated amount or actual cash value of the car, is not a superseding cause precluding liability as a matter of law.").

■ *Glick v. Spadaccia Ryan Haas, Inc.*, 290 A.D.2d 780, 736 N.Y.S.2d 491 (App.Div.2002), is particularly relevant to this case. There, the defendant insurance broker claimed that plaintiff's receipt of the policy barred his contract and negligence claims as a matter of law. After finding that the defendant knew about but failed to correct inaccurate information provided in a binder issued to the plaintiff, the court denied defendant's summary judgment motion holding that:

> Under the circumstances of this case, we find no basis to distinguish between the affirmative misrepresentation by an insurance agent regarding policy coverages in *Kyes v. Northbrook Prop. & Cas. Ins. Co.* and the failure to correct a clear misimpression created by defendant's issuance of a binder in the case at bar. Either circumstance is sufficient to overcome the otherwise presumptive knowledge of the terms of a policy received by the insured.

736 N.Y.S.2d at 493. In other words, when an insurance broker creates a misimpression, whether wilful or not, with regard to an insured's policy, it is not entitled to rely upon the presumption defense as a complete defense. See also, *Ordonez v. Lovelace, Inc.*, No. 02–CV–6193, 2007 WL 496445, at \*5, (E.D.N.Y. Feb. 12, 2007) (noting that New York courts "have created an exception to this general [presumption] rule where … an insurance agent may have failed to correct a misimpression or affirmatively misrepresented the scope of the insurance coverage." (citing *Glick* and cases cited therein)).

In *Baseball Office of the Commissioner v. Marsh & McLennan*, a court of the New York Appellate Division explained why limited exceptions to the presumption rule are warranted with respect to insurance brokers:

> An insured has a right to look to the expertise of its broker with respect to insurance matters. And, it is no answer for the broker to argue, as an insurer might, that the insured has an obligation to read the policy. It is precisely to perform this service as well as others that the insured pays a commission to the broker.

295 A.D.2d 73, 742 N.Y.S.2d 40, 48 (App. Div.2002).

The Court analyzes the present motion within the context of the defendant's original motion for summary judgment. Such a motion may be granted "[o]nly when no reasonable trier of fact could find in favor of the nonmoving party." *White v. ABCO Eng'g Corp.*, 221 F.3d 293, 300 (2d Cir. 2000) (citations omitted). Plaintiff alleges that he intended to procure an insurance policy that would cover his boat year-round, and that Christi either misled or failed to alert him regarding that aspect of his coverage. It is uncontested that at least one of the initial documents detailing the policy obtained by the defendant for the plaintiff incorrectly stated that the boat would indeed be insured for all twelve months of the year. Christi's Mem. Opp. Pls.' Objections to Report & Recommendation 3. We reiterate the conclusion drawn in our August 31, 2006 order, that "these are triable issues of fact."

Although the presumption defense asserted by Christi undoubtedly exists, un-

der New York law the fact that Christi may have created a misimpression concerning the extent of plaintiff's coverage through its own actions places the case squarely within the exception described above. Consequently, were the Court to apply New York law, plaintiff would not be presumed to have read and understood his insurance policy and defendant would not be entitled to summary judgment.

## CONCLUSION

For the reasons explained above, the Court finds that regardless of whether New Jersey or New York law applies to this action, summary judgment for Christi is not warranted. Defendant Christi's motion for reconsideration of the Court's Order of August 31, 2006 is granted and summary judgment is denied. Plaintiff's negligence and malpractice claims may go forward.

SO ORDERED.

## *REPORT AND RECOMMENDATION*

VIKTOR V. POHORELSKY, United States Magistrate Judge.

Judge Dearie has referred to me for a Report and Recommendation, pursuant to 28 U.S.C § 636(b)(1), separate motions for summary judgment filed by each defendant in this insurance contract dispute. Dr. Cunningham, the plaintiff, opposes both motions. For the reasons discussed below, the undersigned respectfully recommends that both summary judgment motions be GRANTED.

## BACKGROUND

This action arises out of a March 11, 2004 incident in which the plaintiff's 50–foot fishing vessel (hereinafter the "Swamp Fox") was destroyed in a fire while docked at the Excelsior Yacht Club in Brooklyn, New York. (Pl.'s Aff. Opp'n INA Summ J. Mot. ¶ 2; INA Rule 56.1 Statement ¶ 24.) The fire apparently began on a neighboring boat but spread to the Swamp Fox and other nearby vessels. (Pl.'s Aff. Opp'n INA Summ J. Mot. ¶ 2.) Through the defendant Christi Insurance Group, Inc., an insurance broker, the plaintiff had procured a policy of insurance for the Swamp Fox. (Pl.'s Aff. Opp'n INA Summ J. Mot. ¶ 4; Christi Rule 56.1 Statement ¶ 4.) Insurance Company of North America ("INA"), the other defendant, had issued the policy. (Pl.'s Opp'n INA Rule 56.1 Statement ¶ 2; INA Rule 56.1 Statement ¶¶ 2–4.) As a result of the plaintiff's "catastrophic loss," he filed a claim seeking coverage for loss of the Swamp Fox and assistance in defending actions brought against the plaintiff by owners of adjoining vessels involved in the fire. (Pl.'s Aff. Opp'n INA Summ. J. Mot. ¶¶ 2–3.)

After an investigation, INA denied the plaintiff's claim because of what it found to be the plaintiff's breach of a "lay-up warranty" contained in his insurance policy. (Pl.'s Aff. Opp'n INA Summ. J. Mot. ¶¶ 3; INA Rule 56.1 Statement ¶ 27; INA Denial Letter, July 1, 2004, attached to Mercante Aff. as Ex. 12 [hereinafter Denial Letter].) The lay-up warranty required that, for the duration of the policy, the plaintiff have his boat "laid-up" from December 1st to April 1st of the following year. (INA Rule 56.1 Statement ¶¶ 5–6; Swamp Fox Policy Declaration Page, Period of April 17, 1998 to April 17, 1999, attached to Mercante Aff. as Ex. 3; Swamp Fox Renewal Certificate, Period of April 17, 2003 to April 17, 2004, attached to Mercante Aff. as Ex. 2 [hereinafter Renewal Certificate].) INA concluded that the plaintiff, having used the Swamp Fox for fishing trips and other purposes during the "lay—up period," had violated the "lay-up warranty," thus depriving him of cover-

age for the incident. (Denial Letter, *supra*, at 4–5.)

The plaintiff insists, however, that he is entitled to compensation under the policy and has instituted the present action as a result. He brings a total of ten claims against the defendants alleging essentially that (1) INA has breached its contract with the plaintiff by denying his insurance claim and refusing to provide coverage for damages incurred from the fire, and that (2) in the event the court determines the plaintiff is not entitled to coverage, Christi is liable for negligence, malpractice, and breach of contract for failing to procure adequate insurance on the plaintiff's behalf. (*See* Am. Compl. ¶¶ 32–72.)

## DISCUSSION

### I. Choice of Law

To determine INA's motion, the court must first address the threshold issue of whether federal or state law applies. The plaintiff and INA do not dispute that in the event federal law does not apply, New York law governs.[1]

■■■ The claims asserted against INA rest on a breach of contract theory, addressing primarily the interpretation of the marine insurance contract at issue. "Absent a specific federal rule, federal courts look to state law for principles governing maritime insurance policies." *Comm. Union Ins. Co. v. Flagship Marine Services, Inc.*, 190 F.3d 26, 30 (2d Cir.1999) (citing *Wilburn Boat Co. v. Fireman's Fund Ins.*, 348 U.S. 310, 319–21, 75 S.Ct. 368, 99 L.Ed. 337 (1955)). While INA cites to several cases from other circuits which it contends establish the existence of a federal rule governing the interpretation

of warranties in marine insurance contracts, *see, e.g., Lexington Ins. Co. v. Cooke's Seafood*, 835 F.2d 1364 (11th Cir. 1988); *Goodman v. Fireman's Fund Ins. Co.*, 600 F.2d 1040 (4th Cir.1979), they do not change the clear law of this circuit as well as the Supreme Court, which have long-recognized that "[t]here is no specific federal rule governing construction of maritime insurance contracts," *Flagship Marine*, 190 F.3d at 30 (citing *Wilburn Boat*, 348 U.S. at 321, 75 S.Ct. 368). *See also Miller Marine Services v. Travelers Prop. Cas. Ins. Co.*, No. 04–CV–5679, 2005 WL 2334385, at *6 (E.D.N.Y. Sept. 23, 2005) (applying New York state law to summary judgment motion regarding marine insurance contract); *Americas Insurance Co. v. Stolt–Nielsen, Inc.*, No. 97–Civ–8018, 2004 WL 2199497, at *3 (S.D.N.Y. Sept.30, 2004) ("Under federal maritime choice-of-law rules, the Court turns to state law for principles governing construction of the maritime contracts of affreightment and insurance at issue here.") (citations omitted); *Hartford Fire Ins. Co. v. Mitlof*, 208 F.Supp.2d 407, 411 (S.D.N.Y.2002) ("Because there is no specific federal rule governing the construction of marine insurance contracts, New York law applies.") (citations omitted).

Nor is there any basis for the court to fashion a federal rule in cases concerning warranties in marine insurance contracts. *Cf. Wilburn Boat*, 348 U.S. at 320–21, 75 S.Ct. 368 ("[C]rucial questions in this case narrow down to these: (1) Is there a judicially established federal admiralty rule governing [marine insurance] warranties? (2) If not, should we fashion one?"); *Youell v. Exxon Corp.*, 48 F.3d 105, 110 (2d Cir. 1995) ("[M]arine insurance policies are

---

1. While the plaintiff and Christi are in substantial disagreement as to whether New York or New Jersey law should apply to their dispute, the court need not address the issue since Christi's motion is ultimately decided on statute of limitations grounds for which choice of law is clear. *See* discussion *infra* Part II.C.2.

governed by state insurance regulations, unless federal courts have fashioned an admiralty rule on point, or unless the need for such rule exists."), *judgment vacated on other grounds by Exxon Corp. v. Youell,* 516 U.S. 801, 116 S.Ct. 43, 133 L.Ed.2d 9 (1995). As the Supreme Court observed in *Wilburn Boat,*

> Under our present system of diverse state regulations, which is as old as the Union, the insurance business has become one of the great enterprises of the Nation. Congress has been exceedingly cautious about disturbing this system, even as to marine insurance where congressional power is undoubted. We, like Congress, leave the regulation of marine insurance where it has been—with the States.

348 U.S. at 320–21, 75 S.Ct. 368 (footnotes omitted). The court therefore concludes that New York law, not federal law, controls the dispute between the plaintiff and INA.

## II. Summary Judgment

### A. Standard

A motion for summary judgment will be granted when there is no material issue of fact to be decided and the undisputed facts warrant judgment for the moving party as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Dallas Aerospace, Inc. v. CIS Air Corp.,* 352 F.3d 775, 780 (2d Cir.2003). If a reasonable jury could return a verdict for the non-movant, then a material issue of fact remains in contention and the motion must be denied. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The materiality of the facts is determined by the substantive law governing the claims. *Id.*

Courts apply a burden-shifting approach in deciding summary judgment motions. The particular burden-shifting framework applied depends on "which party will bear the burden of persuasion on the challenged claim at trial." *Celotex,* 477 U.S. at 331, 106 S.Ct. 2548 (Brennan, J., dissenting). In the present case, the non-moving party would bear the burden of persuasion at trial. Therefore, "the moving party must first make a *prima facie* case by either identifying portions of the record 'which it believes demonstrate the absence of a genuine issue of material fact,' or 'pointing out . . . that there is an absence of evidence to support the nonmoving party's case.'" *Golden Pacific Bancorp v. F.D.I.C.,* 375 F.3d 196, 200–01 (2d Cir.2004) (quoting *Celotex,* 477 U.S. at 323, 325, 106 S.Ct. 2548). After such a showing is made, the non-moving party must set forth specific factual allegations to avoid summary judgment. *See* Fed.R.Civ.P. 56(e); *Golden Pacific,* 375 F.3d at 200; *Stony Brook Marine Trans. Corp. v. Wilton,* No. 94–CV–5880, 1997 WL 538913, at *5 (E.D.N.Y. Apr. 21, 1997). "To this end, '[t]he non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of events is not wholly fanciful.'" *Golden Pacific,* 375 F.3d at 200 (quoting *D'Amico v. City of New York,* 132 F.3d 145, 149 (2d Cir.1998)). Although the non-moving party need not produce evidence in a form that would be admissible at trial in order to avoid summary judgment, Rule 56(c) and 56(e) provide that the non-moving party cannot rest on the pleadings but must set forth specific facts in the affidavits, depositions, answers to interrogatories, or admissions on file showing there is a genuine issue for trial. *See Celotex,* 477 U.S. at 323–24, 106 S.Ct. 2548. "Throughout this inquiry, the Court must credit the non-moving party's evidence and draw all justifiable inferences in favor of that party." *Golden Pacific,* 375 F.3d at

201 (citing *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505).

In dealing with breach of contract claims, when "contractual language is susceptible of at least two fairly reasonable interpretations, this presents a triable issue of fact, and summary judgment [is] improper." *Rothenberg v. Lincoln Farm Camp, Inc.*, 755 F.2d 1017, 1019 (2d Cir. 1985) (citations and internal quotations omitted). Summary judgment is appropriate, however, "where the language of the contract is unambiguous, and reasonable persons could not differ as to its meaning . . . ." *Id.* (collecting New York state court cases); *accord Fulton Cogeneration Associates v. Niagara Mohawk Power Corp.*, 84 F.3d 91, 98 (2d Cir.1996).

## B. INA's Motion for Summary Judgment

INA's primary argument for summary judgment centers on the plaintiff's purported breach of a "lay-up warranty" contained in his insurance policy. Under New York law, a "warranty" in an insurance contract "represent[s] a promise by the insured to do or not to do some thing that the insurer considers significant to its risk of liability under an insurance contract." *Flagship Marine*, 190 F.3d at 31.[2] Generally, with respect to non-marine insurance contracts, an insured may still recover despite having breached a warranty, unless the breach "materially increase[s] the risk of loss, damage or injury within the coverage of the contract." *Id.* § 3106(b). Or, stated differently, "if an insured breaches a warranty that is collateral to the risk that is the primary concern of the contract, the insured will not be precluded from recovery." *Flagship Marine*, 190 F.3d at 31. With respect to marine insurance contracts like the one here, however, the materiality of the breach is irrelevant under New York law. N.Y. Ins. Law § 3106(c) ("This section [defining warranty and governing the effects of a breach] shall not affect the express or implied warranties under a contract of marine insurance in respect to, appertaining to or in connection with any and all risks or perils of navigation, transit, or transportation . . . ."); *see also Mitlof*, 208 F.Supp.2d at 411–12 ("New York's Insurance Law specifically carves out a maritime exception from its general rule regarding breach of collateral warranties.") (citations omitted). As a result, New York state courts have long-recognized that "an express . . . warranty [in a marine insurance policy] must be literally complied with, and . . . noncompliance forbids recovery, regardless of whether the omission had causal relation to the loss." *Jarvis Towing & Transp. Corp. v. Aetna Ins. Co.*, 298 N.Y. 280, 282, 82 N.E.2d 577 (1948) (citations omitted). *See also Flagship Marine*, 190 F.3d at 31 ("[W]arranties in maritime insurance contracts must be strictly complied with, even if they are collateral to the primary risk that is the subject of the contract, if the insured is to recover.") (citations omitted); *Cogswell v. Chubb*, 1 A.D. 93, 36 N.Y.S. 1076, 1078 (App.Div.1896) ("[T]he breach of an express warranty [in a marine insurance contract], whether material to the risk or not, whether a loss happens through the breach or not, absolutely determines the policy, and the assured forfeits his rights under it.") (citations omitted). The impo-

---

**2.** Specifically, section 3106 of New York's Insurance Law defines a "warranty" as,

> Any provision . . . which has the effect of requiring . . . as a condition precedent of the insurer's liability thereunder, the existence of a fact which tends to diminish, or the non-existence of a fact which tends to increase, the risk of the occurrence of any loss, damage, or injury within the coverage of the contract.

N.Y. Ins. Law § 3106(a) (2006).

sition of the "literal performance rule," as it is often referred to, *see Kron v. Hanover Fire Ins. Co.,* 20 A.D.2d 670, 246 N.Y.S.2d 848, 849–50 (App.Div.1964) (citations omitted), "stems from the ... peculiarly difficult [task] for marine insurers [in] assess[ing] their risk, such that insurers must rely on the representations and warranties made by insureds regarding their vessels' condition and usage," *Flagship Marine,* 190 F.3d at 31–32 (citations omitted).

The parties do not dispute that the provision at issue is a warranty within the meaning of section 3106(c) of New York's Insurance Law. Thus, the literal performance rule applies and any breach, irrespective of materiality, precludes coverage. What the parties do disagree about are the terms and construction of the warranty, which, in turn, affects the breach of contract inquiry. This requires a review of the rules of construction for insurance contracts as employed by New York state courts.

In construing an insurance policy, the court must give effect to "the reasonable expectation and purpose of the ordinary business man when making an ordinary business contract ....' " *Kimmins Indus. Serv. Corp. v. Reliance Ins. Co.,* 19 F.3d 78, 81 (2d Cir.1994) (quoting *Album Realty Corp. v. Am. Home Assurance Co.,* 176 A.D.2d 513, 574 N.Y.S.2d 704, 706 (App. Div.1991)) (additional citation omitted). New York law requires that "[t]he parties' intent ... be ascertained by examining the policy as a whole, and by giving effect and meaning to every term of the policy." *Hartford Ins. Co. of Midwest v. Halt,* 223 A.D.2d 204, 646 N.Y.S.2d 589, 594 (1996) (citing *County of Columbia v. Continental Ins. Co.,* 83 N.Y.2d 618, 628, 612 N.Y.S.2d 345, 634 N.E.2d 946 (1994)) (additional citations omitted). Unambiguous provisions of an insurance contract must be given

their plain and ordinary meaning. *Pepper v. Allstate Ins. Co.,* 20 A.D.3d 633, 799 N.Y.S.2d 292, 294 (App.Div.2005) (citations omitted). Only when the terms of an insurance contract are found to be ambiguous will the court apply the rules of construction. *Flagship Marine,* 190 F.3d at 33 ("As a general rule, plain or unambiguous language will be given its ordinary meaning and effect, and the need to resort to rules of construction arises only when an ambiguity exists.") (citation omitted).

"[A]mbiguity exists where the term of a contract could suggest 'more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.' " *Alexander & Alexander Services, Inc. v. These Certain Underwriters at Lloyd's,* 136 F.3d 82, 86 (2d Cir.1998) (quoting *Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 906 (2d Cir. 1997)). Where a contractual term is found to be ambiguous, "the court may accept any available extrinsic evidence to ascertain the meaning intended by the parties during the formation of the contract." *Alexander,* 136 F.3d at 86 (citing *Seiden Associates v. ANC Holdings, Inc.,* 959 F.2d 425, 428–29 (2d Cir.1992)). In doing so, however, the court must acknowledge that "questions of material fact necessarily exist" thus precluding summary disposition of the claims at issue. *Id.* (citing *Seiden,* 959 F.2d at 428). Therefore, "only where the court finds that the terms are unambiguous, or where no extrinsic evidence exists, may it properly grant summary judgment to one of the parties." *Id.* (citing *Seiden,* 959 F.2d at 428 ("Where the language used is susceptible to differing interpretations ... and where there is relevant extrinsic evidence of the parties' actual intent, the meaning of the words be-

come[s] an issue of fact and summary judgment is inappropriate.")). Determining whether an insurance contract is ambiguous is an issue of law that is within the province of the court. *Flagship Marine,* 190 F.3d at 33 (citation omitted). All ambiguities must be resolved against the insurer and in favor of the insured. *Pepper,* 799 N.Y.S.2d at 294 (citations omitted).

Applying the above principles, the court examines the lay-up warranty to determine whether there is any ambiguity that prevents the court from determining that it was breached as a matter of law. The warranty at issue states that "It is warranted the vessel will be laid up for part of the year, the dates are: From noon: 12/01 To noon: 4/01." (Renewal Certificate, *supra,* at 1.) The term "laid up" is not defined in the policy. However, the evidence submitted on this motion establishes that the term means, at the very least, that the vessel be decommissioned and taken out of use during the specified period. The plaintiff admits as much. For example, when asked at his deposition to define a "lay-up period," the plaintiff described it as "a period of time when the boat is decommissioned and not used during any given season." (Cunningham Dep. 23.) Representatives of INA and Christi also conveyed similar understandings of the lay-up term. (*See, e.g.,* McDowell Dep. 17:15–18 ("[L]ay up means that the boat is completely out of commission, it's not being used for any reason whatsoever."); Brophey Dep. 95:11–15, Mar. 11, 2005 ("[Plaintiff's counsel:] How do you lay up a boat? [Brophey:] Well, you have to de-commission it; you have to winterize the engine, shut down all systems, take off equipment, make the boat not operable.").) The argument advanced by the plaintiff that the lay-up term is ambiguous because the parties had differing opinions as to the "specific list of what an insured had to do to comply with the ... lay-up [warranty]" is unavailing. (Pl.'s Opp'n INA Summ. J. Mot. 10.) Even assuming the existence of such a dispute, the fact remains that the parties uniformly agree that laying up a boat means that it not be used during the specified period. There is no evidence in the record to the contrary. As to that meaning then, the term is unambiguous, and the court may "'construe [the] contract as a matter of law and grant summary judgment accordingly.'" *Alexander,* 136 F.3d at 86 (quoting *Cable Science Corp. v. Rochdale Village, Inc.,* 920 F.2d 147, 151 (2d Cir.1990)).

It is also undisputed that the plaintiff used the Swamp Fox during the lay-up period. (*Compare* INA Rule 56.1 Statement ¶¶ 20–22 *with* Pl.'s Opp'n INA Rule 56.1 Statement ¶ 19.) The plaintiff openly acknowledges that he used the Swamp Fox "twelve months a year" and had taken "approximately half a dozen" fishing trips during the lay-up period, including one 10–hour trip on the weekend of February 29 shortly before the fire. (Cunningham Examination Under Oath 30:19–22, 31:24–2513; Cunningham Dep. 40:10–22; *see also* INA Rule 56.1 Statement ¶ 21.)[3] It is therefore clear that the plaintiff had breached the lay-up warranty.[4] The court

---

3. The plaintiff also testified that he "lived" on the Swamp Fox "every weekend," which he described as his "habit" and "routine." (Cunningham Examination Under Oath 34:24–25.)

4. In his affidavit in opposition, the plaintiff attempts to raise a factual dispute about what it means to "lay-up" a boat, stating that the meaning of a lay-up period he had conveyed at the deposition was based on his "understanding of that term as of March 25, 2005, the date of [the] deposition, not [on his] understanding in 1998 or any time before the Fire ...." (Cunningham Aff. Opp'n Christi Summ. J. Mot. ¶ 10.) This post-hoc explanation fails to create a material issue of fact for

rejects the plaintiff's argument that these past events are immaterial because the Swamp Fox was not in operation and thus not in breach of the warranty at the time of the fire. The lay-up period, as set forth in the warranty, runs from December 1 to April 1 of the following year. Therefore, any use of the boat during that period results in a breach of the lay-up warranty. It matters not whether the purported breach occurred on the date of the accident for which the plaintiff seeks coverage or on some other date.

The plaintiff argues, however, that even if he had breached the lay-up warranty, any such breach was cured at the time of the fire because the Swamp Fox had been winterized and decommissioned at that point (*See* Mazzara Aff. ¶ 14). This argument cannot be squared with the plain terms of the policy which contains a provision setting forth the procedure to be followed in the event the lay-up warranty is breached. Entitled "Extension of Coverage," the provision provides,

> If the Navigational Limits or Lay–Up Warranty shown on the Declarations Page are breached due to matters beyond your control, the policy will remain in effect, but only if you give us written notice of the breach within 10 days after the breach and any additional premiums

due us for this extension of coverage. If the Navigation Limits or Lay–Up Warranty are breached voluntary [sic] there shall be no coverage under this policy without both prior notice to us and approval by us.

(Yacthsmann/Windjammer Policy, General Conditions and Exclusions, attached to Mercante Aff. as Ex. 2.)

The plain language of the policy thus anticipates the possibility of a breach of the lay-up warranty and provides avenues by which such a breach can be remedied or cured. The plaintiff did not avail himself of these opportunities. Nor does he point the court to any authority which provides that an insured may cure a breach of warranty notwithstanding the existence of a governing contractual provision.

The plaintiff's reliance on *Henjes v. Aetna Ins. Co.*, 132 F.2d 715, 719–20 (2d Cir. 1943), is misplaced. The *Henjes* court grappled with the issue of whether an insured's breach of a warranty in a marine insurance contract completely forfeited the insured's rights under the policy or whether it "merely suspended" coverage until the breach was cured. *Id.* at 718. While the *Henjes* court opted for the latter disposition, its decision was based primarily on the terms of the contract in that case

---

several reasons. First, the law is clear in this circuit that a party may not create a factual issue precluding summary judgment by offering an affidavit that contradicts previous sworn testimony. *Langman Fabrics v. Graff Californiawear Inc.*, 160 F.3d 106, 112 (2d Cir.1998) (citing *Mack v. United States*, 814 F.2d 120, 124–25 (2d Cir.1987) *and Trans–Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 572 (2d Cir.1991)). Second, and more importantly, the question whether the term "lay-up" is ambiguous depends, not on what the contracting parties *thought* "lay-up" meant when the policy was first issued, but on its meaning "when viewed objectively by a reasonably intelligent person who has examined the context of the entire

integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Alexander*, 136 F.3d at 86. In that sense, the undisputed statements in the record by all parties that the term means, at a minimum, "out of use" renders the term unambiguous on that point as a matter of law. *Cf. Omni Quartz, Ltd. v. CVS Corp.*, 287 F.3d 61, 64 (2d Cir.2002) ("It is well established that a court may not admit extrinsic evidence in order to determine the meaning of an unambiguous contract. As to such a contract, a party 'is precluded from introducing extrinsic evidence of the contract's purpose in order to vary the plain meaning of the writing.' ").

which expressly addressed such a situation. As the *Henjes* court stated,

> Some light as to what the parties intended is shed on this point by the provision in the original policy regarding the effect of deviation. That made the policy "null and void" for any "deviation beyond the limits named" but whenever the vessel returned within those limits the policy was to reattach if "the vessel shall then be in all respects seaworthy." [...] Accordingly, we believe the intention of the parties to this policy, *as shown by the language of it and of the endorsement,* must be taken to be that such a breach of the warranty as was here approved would suspend the insurance during the time the breach remained uncured and that the insurance would reattach when the breach was ended.

*Id.* at 718–19 (emphasis added). Although the policy here also contains a provision addressing the possibility of a breach of warranty and its consequences, it does so in starkly different terms. In contrast to the contract in *Henjes,* the one here provides the specific steps to be taken in the event an insured breaches the lay-up warranty, steps which the plaintiff did not take. *Henjes* therefore does not assist the plaintiff.

For the reasons stated above, the court concludes that the undisputed facts demonstrate that the plaintiff breached the "lay-up warranty" and summary judgment should be granted for INA.

### C. Christi's Summary Judgment Motion

The plaintiff asserts various state law claims against Christi including breach of contract, negligence, and malpractice. Christi contends summary disposition is warranted on various grounds including failure to state a claim and statute of limitations.

### 1. Failure to State a Claim of Professional Malpractice against Insurance Brokers

Christi's contention that New York law does not recognize "professional malpractice" claims against insurance brokers (Christi Summ. J. Mot. 8) rests on a fundamental misreading of the law. The cases cited by Christi in support of its proposition do not address the legal validity of insurance broker professional malpractice claims. *See Telegdi v. A.M.R. Services Corp.,* No. 97–CV–1177, 2000 WL 264333, at *1 (E.D.N.Y. Jan. 21, 2000); *Chase Scientific Research, Inc. v. NIA Group Inc.,* 96 N.Y.2d 20, 725 N.Y.S.2d 592, 749 N.E.2d 161 (2001); *Busker on the Roof Ltd. P'ship v. Warrington,* 283 A.D.2d 376, 725 N.Y.S.2d 45 (App.Div.2001). Rather, the questions presented in those cases dealt with whether insurance brokers were "professionals" for purposes of applying New York's three-year statute of limitations for non-medical malpractice claims. *Telegdi,* 2000 WL 264333, at *2 ("[T]he court finds that insurance agents and brokers are not professionals within the meaning of CPLR 214(6) and it will apply the six year statute of limitations for contract actions."); *Chase Scientific,* 96 N.Y.2d at 20, 725 N.Y.S.2d 592, 749 N.E.2d 161 ("[G]iven that 'malpractice' is professional misfeasance toward one's client, who is a 'professional' within [CPLR 214(6) ]? The question arises in the context of insurance agents and brokers.").[5] Accordingly,

---

**5.** To the extent the *Warrington* decision, in finding that "defendant insurance brokers and agents are not professionals and, thus ... claims against them do not sound in professional malpractice," lends support to the plaintiff's contention, it is wrongly decided. The only case cited by the *Warrington* court to support its finding was *Chase Scientific,* which, as explained above, dealt solely with insurance broker malpractice claims in rela-

the plaintiff's argument attacking the general soundness of insurance broker malpractice claims is meritless.

## 2. Timeliness of Claims Against Christi

On the other hand, Christi's contention that all of the plaintiff's claims against it are time barred has merit. For cases arising in diversity, federal courts apply the forum state's statute of limitations. *Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 626–27 (2d Cir.1998) ("Where the jurisdiction rests upon diversity of citizenship, a federal court sitting in New York must apply the New York ... statutes of limitations.") (citing *Guaranty Trust Co. v. York*, 326 U.S. 99, 108–09, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945)) (additional citations omitted); *Iacobelli Const., Inc. v. County of Monroe*, 32 F.3d 19, 27 (2d Cir.1994) ("On this diversity claim, we must apply New York's statute-of-limitations rules.") (citations omitted). This is generally the case, "even when the injury giving rise to the action occurred outside New York." *Stuart*, 158 F.3d at 627 (citing *Stafford v. Int'l Harvester Co.*, 668 F.2d 142, 147 (2d Cir.1981)). Therefore, New York's statute of limitations applies.[6] Pursuant to the landmark decision by the Court of Appeals in *Chase Scientific Research v. NIA Group, Inc.*, insurance brokers are not considered "professionals" for purposes of the three-year statute of limitations for non-medical malpractice claims under N.Y. C.P.L.R. 214(6). 96 N.Y.2d at 30–31, 725 N.Y.S.2d 592, 749 N.E.2d 161. As such, "actions against [insurance] agents and brokers are governed not by CPLR 214(6),

but by the limitations periods applicable to negligence actions [CPLR 214(4)] and breach of contract actions [CPLR 213(2)]." 96 N.Y.2d at 31, 725 N.Y.S.2d 592, 749 N.E.2d 161.

Here, the plaintiff asserts breach of contract, negligence, and malpractice claims against Christi. Determining which limitation periods apply to the breach of contract and negligence claims is relatively straightforward. Under C.P.L.R. 213(2), a six-year limitation period is applied to breach of contract claims, *see One Beacon Ins. v. Terra Firma Constr. Mgmt. & Gen. Contracting, LLC*, No. 02–Civ–7492, 2004 WL 369273, at *3 (S.D.N.Y. Feb. 26, 2004) (citing *Nat'l Life Ins. Co. v. Frank B. Hall & Co.*, 111 A.D.2d 681, 490 N.Y.S.2d 500 (App.Div.1985)); *Chase Scientific*, 96 N.Y.2d at 30–31, 725 N.Y.S.2d 592, 749 N.E.2d 161, and a three-year limitation period under C.P.L.R. 214(4) to negligence claims, *see Chase Scientific*, 96 N.Y.2d at 30–31, 725 N.Y.S.2d 592, 749 N.E.2d 161; *One Beacon*, 2004 WL 369273, at *3 (citations omitted); *Von Hoffmann v. Prudential Ins. Co. of Am.*, 202 F.Supp.2d 252, 264 (S.D.N.Y.2002) (citations omitted).

Determining which limitation period applies to the malpractice claim is, however, a more difficult matter. Depending on how it is pleaded, a malpractice claim may "theoretically ... rest on breach of contract to obtain a particular bargained-for result," *Chase Scientific*, 96 N.Y.2d at 25, 725 N.Y.S.2d 592, 749 N.E.2d 161, in which case the longer six-year limitation period under C.P.L.R. 213(2) may apply as op-

---

tion to the statute of limitations. The plaintiff's citation to *Warrington* is therefore unavailing.

**6.** This result is not changed by New York's "borrowing statute" since the plaintiff is a New York resident. *See* N.Y. C.P.L.R. 202 (2006); *see also McCarthy v. Bristol Laboratories, Div. of Bristol–Myers, Co.*, 86 A.D.2d 279,

449 N.Y.S.2d 280, 283 (App.Div.1982) ("The timeliness of an action brought in New York by a resident of the State upon a cause of action accruing elsewhere is governed by the applicable New York Statute of Limitations and the New York 'borrowing statute' is inapplicable.") (citations omitted).

posed to the shorter three-year period governing negligence claims under C.P.L.R. 214(4). *Cf. Kliment & Frances Halsband Architects v. McKinsey & Co., Inc.*, 3 N.Y.3d 538, 542, 788 N.Y.S.2d 648, 821 N.E.2d 952 (2004) (concluding that claim against architects was that of professional malpractice not breach of contract for purposes determining whether to apply statute of limitations under C.P.L.R. 213(2) or C.P.L.R. 214(6)). The malpractice claim here, however, is pleaded in the manner of a negligence claim:

> If it is determined that defendant INA is not obligated to provide insurance coverage to Dr. Cunningham for the Direct Loss under the INA Policy, in whole or in part, the same shall have resulted from *the negligence and/or malpractice* of defendant Christi in negligently, recklessly, and carelessly performing its obligations to Dr. Cunningham, by failing to procure adequate, suitable, valid and binding insurance for Dr. Cunningham covering the Vessel.

(Am. Compl. ¶ 62 (emphasis added).) It is evident from this language that the plaintiff here alleges that Christi failed to comply with ordinary or professional standards of conduct in procuring the policy for the Swamp Fox. Moreover, there is no factual allegation of any "breach of a bargained-for contract provision," which is, after all, the essential element in a breach of contract claim. *See Kliment & Frances*, 3 N.Y.3d at 542, 788 N.Y.S.2d 648, 821 N.E.2d 952. The three-year limitation period under C.P.L.R. 214(4) should therefore be applied to the malpractice claim.[7]

Having established the applicable limitations periods, the timeliness of the claims now depend on when they accrued, and when the present suit was filed. Negligence and breach of contract claims against insurance brokers accrue "when the wrongdoing occurs and not when the wrongdoing is discovered." *One Beacon*, 2004 WL 369273, at *3 (citing *Mauro v. Niemann Agency Inc.*, 303 A.D.2d 468, 756 N.Y.S.2d 611, 612 (App.Div.2003)) (additional citations omitted). For breach of contract claims generally this means that the cause of action accrues at the time of breach. *Ely–Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399, 402, 599 N.Y.S.2d 501, 615 N.E.2d 985 (1993) (citations omitted). Applying this principle, the Appellate Division has found that such a claim accrued "upon the insured's receipt of the certificate of insurance," *Santiago v. 1370 Broadway Associates, L.P.*, 264 A.D.2d 624, 695 N.Y.S.2d 326 (App.Div. 1999) (citation omitted), *aff'd as modified* 96 N.Y.2d 765, 725 N.Y.S.2d 599, 749 N.E.2d 168 (2001), or when the insurance broker failed to undertake its obligations under the contract at issue, *Mauro*, 303 A.D.2d 468, 756 N.Y.S.2d 611, 612 (App. Div.2003). As for claims of insurance broker negligence, including malpractice, such claims accrue when the policy is first issued. *See One Beacon*, 2004 WL 369273, at *3 (citing *Mauro*, 756 N.Y.S.2d at 612–13).

---

7. The court notes that the conclusion reached here seems to differ from that of *Telegdi*, cited by Christi in support of its failure to state a claim argument. While the *Telegdi* court concluded that, for purposes of timeliness, a claim for professional malpractice against an insurance broker was governed by the six year limitations period of C.P.L.R. 213(2), the case was decided before the Court of Appeals' decision in *Chase Scientific* which provided definitive guidance on the matter. Furthermore, the decision in *Telegdi* to apply C.P.L.R. 213(2) to malpractice claims against insurance brokers stemmed primarily from the *Telegdi* court's recognition—ultimately proved correct by *Chase Scientific*—that insurance brokers were not "professionals" within the meaning of C.P.L.R. 214(6). 2000 WL 264333, at *2.

Applying the above principles, the breach of contract claim accrued, at the latest, when the plaintiff signed the application for insurance on or around April 18, 1998, which was subsequently sent to and received by Christi on or around May 19, 1998. (*See* Christi Rule 56.1 Statement ¶¶ 7–8; Application for Yacht Insurance, April 18, 1998, attached to McDowell Aff. as Ex. C.) [8] Thus, taking as an accrual date the end of May 1998, the action must have been filed by the end of May 2004 in order for the breach of contract claim to be considered timely. *See* N.Y. C.P.L.R. 213(2). However, the plaintiff did not bring this action until July 15, 2004. (Docket No. 1.) Therefore, the breach of contract claim is time barred.

The plaintiff argues that because the insurance policy was renewed on an annual basis, each instance of renewal had, in essence, reset the statute of limitations clock, thus rendering the breach of contract claim timely. The court disagrees. The case law is clear in New York that "annual renewals, effected with no further discussions between plaintiff and the broker ... constitute only new instances of damage, and are therefore irrelevant for limitations analysis." *Hudson Envelope Corp. v. Klausner,* 249 A.D.2d 31, 670 N.Y.S.2d 104 (App.Div.1998) (citing *Ely– Cruikshank,* 81 N.Y.2d at 402, 599 N.Y.S.2d 501, 615 N.E.2d 985). Furthermore, to the extent the plaintiff argues that some form of "continuous treatment" or "continuous representation" doctrine applies to toll the statute of limitations, this argument has been expressly rejected in past cases. *See One Beacon,* 2004 WL 369273, at *3 n. 3 ("Under New York law ... the continuous treatment doctrine does not apply to insurance brokers and

agents.") (citing *Chase Scientific,* 96 N.Y.2d at 31, 725 N.Y.S.2d 592, 749 N.E.2d 161, and *Video Corp. of Am. v. Frederick Flatto Associates, Inc.,* 85 A.D.2d 448, 448 N.Y.S.2d 498, 504 (App.Div.1982)) (additional citation omitted).

The malpractice and negligence claims are similarly time barred. With a three-year statute of limitations period and the action having been brought on July 15, 2004, the claims must have accrued on or after July 15, 2001 to be considered timely. It is evident, however, that the claims accrued during the months of April to May 1998 when Christi first procured the insurance policy for the plaintiff. The negligence and malpractice claims are therefore untimely and summary judgment is warranted.

## CONCLUSION

For the reasons stated above, the court respectfully recommends that INA's and Christi's motions for summary judgment be GRANTED.

\* \* \* \* \* \*

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court with a copy to the undersigned within 10 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298 (2d Cir.1992), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of*

8. The plaintiff contested these factual allegations in his opposing Rule 56.1 statement but did so in conclusory fashion and offered no affirmative proof to the contrary. (*See* Pl.'s Rule 56.1 Statement Opp'n Christi Summ. J. Mot. ¶¶ 7–8.)

*Health and Human Serv.,* 892 F.2d 15, 16 (2d Cir.1989) (per curiam).

April 27, 2006.