[742 NYS2d 40]

BASEBALL OFFICE OF THE COMMISSIONER et al., Appellants, v
MARSH & McLENNAN, INCORPORATED, Respondent.

First Department, May 14, 2002

## APPEARANCES OF COUNSEL

*Jonathan Mazer* and *Ronald F. Wick* of counsel (*Lee Ellis, Jr.* and *William M. Brodsky* on the brief; *Baden Kramer Huffman & Brodsky, P.C.* and *Baker & Hostetler LLP,* attorneys), for appellants.

*Eric J. Van Vugt* of counsel (*Hal S. Shaftel* and *Matthew J. Duchemin* on the brief; *Quarles & Brady LLP* and *Solomon, Zauderer, Ellenhorn, Frischer & Scharp,* attorneys), for respondent.

## OPINION OF THE COURT

SULLIVAN, J.P.

These appeals arise in the context of a malpractice action against an insurance broker alleging, with respect to an underlying liability claim for which plaintiffs were left without primary coverage, that defendant, inter alia, failed to procure adequate liability insurance, and failed to give the required notice of claim to the excess insurer, whose policy did cover the claim, or to advise plaintiffs properly with respect to such notice obligation.

This action has its genesis in a lawsuit commenced on December 15, 1992, *Piazza v Major League Baseball* (831 F Supp 420 [ED Pa 1993]) alleging a number of claims relating to statements made in September 1992 by a baseball club executive associated with the Baseball Office of the Commissioner, a plaintiff herein, along with The American League of Professional Baseball Clubs and The National League of Professional Baseball Clubs (collectively Baseball), in connection with an investigation conducted of Piazza and the other plaintiffs, whose bid to purchase a major league franchise had been rejected by Baseball. That lawsuit terminated in a settlement that allocated the sums Baseball paid to the plaintiffs entirely to the defamation claims.

In the spring of 1992, Baseball, through its broker, defendant Marsh & McLennan, Incorporated (Marsh), procured a

comprehensive general liability policy with Hartford Fire Insurance Company and an excess liability insurance policy with Twin City Fire Insurance Company for a one-year period commencing May 20, 1992. The Hartford policy provided Baseball with, inter alia, liability coverage with a limit of $1,000,000 each occurrence for "personal injury," as set forth in the standard commercial liability policy, which, as defined, included claims for defamation. Baseball's coverage historically included liability insurance for the public statements of its executives and committee members. Specifically, Baseball had such coverage from May 1981 through 1986 and from May 1989 through May 1991, albeit with insurers other than Hartford. Of significance to the issues on appeal, the Twin City umbrella policy provided: "Failure of the named insured to [maintain in effect the underlying insurance policies] shall not invalidate this policy, but in the event of such failure, the company shall be liable only to the extent it would have been liable had the named insured complied therewith."

Although, as issued, the Hartford policy included coverage for personal injury, Hartford advised Tracey Quinn, who handled the details of the placement for Marsh, that it had decided to exclude personal injury coverage. Hartford confirmed its telephone communication of this decision with a letter to Quinn, dated May 21, 1992, stating: "Since our original binder provided personal injury, we will provide coverage subject to our original terms and conditions for 60 days. We hope this is enough time for your office to replace the account. Please notify us if the insured plans to accept our new proposal, or if the account will be placed with a different carrier." As Quinn admits, she did nothing to secure replacement personal injury coverage before the exclusion took effect, or thereafter, although, having unsuccessfully attempted to dissuade Hartford from issuing its exclusion, she was aware that such coverage was important to Baseball. Nor did she notify Baseball of the exclusion. Even after receipt of the policy showing the exclusion, effective July 27, 1992, Quinn failed to take any action. Instead, on October 29, 1992, she forwarded both the Hartford and Twin City policies to Baseball with a covering letter stating, "We have checked the policies for accuracy and have found everything to be in order."[1]

Shortly after the December 15, 1992 commencement of the Piazza lawsuit, Baseball's chief financial officer, Jeffrey White,

---

1. At the expiration of the Hartford policy, Quinn replaced it with a general liability policy that included personal injury coverage.

reviewed the Hartford and Twin City policies to determine whether there was coverage for the lawsuit and concluded, correctly, at least in the case of the Hartford policy, that Baseball was not covered. He reached a similar conclusion with respect to the Twin City policy, even though only the Hartford policy contained the personal injury exclusion. As to the Twin City policy, White was of the view that "if you did not have coverage of this type on the primary policy, than the umbrella policy would not pick up that coverage." Ms. Quinn, as she was to testify during these proceedings, shared that view. White testified that he called Marsh at the time the Piazza lawsuit was commenced and spoke to Quinn to seek her advice and that she confirmed that Baseball was not covered under the policies. Quinn has denied that such a conversation occurred. According to White, Quinn did not tell him that the Hartford policy provided coverage for claims such as Piazza's for 60 days and that coverage for such claims was thereafter excluded. Based, in part, on this conversation and his own interpretation of the policies, White took no further action. Neither Hartford nor Twin City was notified at this time.

Notwithstanding the Hartford personal injury exclusion, Baseball subsequently, by letter of July 20, 1994, notified both Hartford and Twin City of the Piazza lawsuit, both of which, by letter dated August 29, 1994, disclaimed coverage on the basis of the personal injury exclusion in the Hartford policy and Baseball's failure to provide prompt notice, as required by the policies. In the July 20, 1994 letter, White stated that at the time of the commencement of the Piazza lawsuit he telephoned Marsh "to notify you of the commencement of this action." Three days after their disclaimer, both insurers commenced an action in Supreme Court, New York County, seeking a declaration that there was no coverage on the grounds asserted in the disclaimer with respect to the Piazza lawsuit. In August 1995, Supreme Court (Herman Cahn, J.) granted the insurers' motion for summary judgment, declaring in their favor on the basis of Baseball's failure to provide timely notice of the Piazza lawsuit. The decision said nothing of Marsh's involvement or lack thereof with respect to the notice issue. This Court affirmed that determination (236 AD2d 334) and the Court of Appeals denied leave to appeal (90 NY2d 803). Baseball settled the Piazza lawsuit by a monetary payment, incurring, in addition, attorneys' fees in defending both that lawsuit and the insurers' declaratory judgment action.

Baseball then commenced this malpractice action against Marsh to recover for these uninsured losses, asserting, inter

alia, causes of action for breach of fiduciary duty, breach of contract and negligent misrepresentation. It specifically complained of Marsh's failing to procure adequate liability insurance, permitting the deletion of personal injury coverage without notifying Baseball of such deletion, and failing to give notice to the insurers of the Piazza lawsuit and alert Baseball to its obligation to give prompt notice to the insurers.

After joinder of issue and while discovery was still under way, Marsh, arguing that it could be held liable only if it were responsible for the delay in giving notice to the insurers, moved pursuant to CPLR 603 to conduct a separate trial on that issue "in advance of any trial on Baseball's substantive claims." The court directed a hearing on the issue of "whether [Marsh] caused [Baseball's] delay in giving notice of the Piazza lawsuit." Prior to the scheduled hearing, Baseball moved to strike Marsh's late notice defense,[2] and, in a memorandum regarding the hearing, stated that a note of issue had not been filed and that it had not waived its right to a jury trial. Baseball also noted that its participation in the hearing, which it had opposed, would not constitute a waiver of its rights "to the presentation of evidence at a trial on the merits." The court explained its ruling directing a hearing on the ground that in a prior motion by Baseball for partial summary judgment, which had been denied 10 months earlier, Baseball had placed in issue Marsh's responsibility for the late notice given to the insurers. Noting its preference for disposing of that issue, which it described as legal rather than factual, "now on motion," the court heard evidence over a two-day period in September 2000. On November 27, 2000, without further clarification as to the procedural status of the completed hearing or rationale for its ruling, the court granted Marsh's motion for a separate trial of the notice issue. Baseball has appealed from this determination.

By order entered December 26, 2000, which is also before us on this appeal, the court denied the motion to strike the late notice defense, taking note of Baseball's "studied indifference" to its responsibilities under the policies. It reiterated its earlier statement that the evidentiary hearing was "in aid of determining the plaintiffs' motion for partial summary judgment" and emphasized that "[t]his was not the trial of this case." The court found that on the issue of whether Quinn had advised

---

**2.** Although Marsh's answer interposed four affirmative defenses—failure to state a cause of action, contributory negligence, waiver and estoppel—late notice was not asserted.

White in December 1992/early January 1993 that the Piazza claim was not covered under the policies and thus induced Baseball not to give notice, the "credible evidence is that she did not have such a conversation." The court further found that White lacked credibility. Notwithstanding these factual findings, the court held, "With or without determining witnesses credibility, this record contains no reasonable basis on which a finder of fact could conclude that the defendant contributed in any significant way to [B]aseball's failure to give timely notice." Finally, the court, in effect, held that Baseball waived its right to a jury determination of the witnesses' credibility by failing to request a jury in advance of the hearing. It pronounced its "rulings on all issues, including credibility," to be the law of the case.

Subsequently, on February 5, 2001, Marsh moved for summary judgment solely on the basis of the court's rulings on the notice issue. Baseball then moved for partial summary judgment on the issue of Marsh's failure to procure adequate insurance. The court granted Marsh's motion and denied Baseball's, citing Baseball's failure to introduce evidence that Marsh could have procured replacement coverage in 1992, even though the issue was never the subject of the hearing, and the unrebutted testimony of Marsh employees that they were unaware at the time in question of any insurers that would have provided personal injury coverage. On the notice issue, the court held that since Baseball was "sophisticated" and had read its policy, Marsh could not be found at fault for improperly advising its client that there was no coverage. Moreover, it held, there was "no evidence" that Marsh had assumed a duty to notify the insurers of the Piazza lawsuit because, the court found, citing its prior decision, the conversation between White and Quinn "never occurred." Finally, the court held, Marsh's failure to alert Baseball to the need to give notice was irrelevant because "the notice provisions were contained in the policies that [Baseball] reviewed." Judgment was thereafter entered on the order dismissing the complaint. We reverse.

The grant of summary judgment in Marsh's favor is the product of a confluence of procedural and substantive errors on the part of the motion court, the first of which occurred when it granted Marsh's motion for a separate trial of the notice issue. The ordering of a separate trial of a claim or separate issue under CPLR 603, a discretionary determination (*see, Philippson v Hexalon Real Estate*, 111 AD2d 126, 127), has traditionally been ordered where the separated issue "does not touch

upon the merits of the main controversy but will, nevertheless, be dispositive of the entire action." (*Morford v A. Sulka & Co.*, 79 AD2d 502, 502.) Typically, the separate trial device is used to address such nonmerits defenses as statute of limitations, statute of frauds, release and lack of jurisdiction (*id.* at 502-503). While a separate trial on a preliminary issue relating to the merits may be appropriate where the trial would be relatively short and potentially dispositive of the case (*Mihalchik v Schepis Constr. Co.*, 8 AD2d 618; *see, Flynn v Royal Dev. Co.*, 265 App Div 592), in the instant matter, contrary to the motion court's view, the timeliness of the notice given the insurers was not the dispositive issue. The failure to procure replacement coverage for personal injury was. Moreover, the two issues were inextricably interwoven and could not be separated. As matters turned out, the hearing on the notice issue was, in fact, a trial of both issues, as to which Baseball was deprived of its right to a trial by jury.

This action is based primarily on the claim that Marsh, as Baseball's insurance broker, failed to obtain, as part of the standard-form general liability policy, personal injury coverage. Baseball contends that Marsh accepted the insurer's deletion of personal injury coverage, neither advising it of that deletion nor making any attempt to procure replacement coverage, despite the fact that, as conceded, Quinn was aware of the importance of such coverage to Baseball. As she testified, when asked about finding replacement coverage, "It was something I had intended to get to but didn't." As a result, Baseball claims, it suffered a loss, at least to the extent of the coverage it had prior to the deletion, $1,000,000, according to the original terms of the Hartford policy. Under this theory of the case, the absence of coverage caused by Marsh's dereliction in the placement of the insurance rendered the timeliness of Baseball's notice irrelevant, at least with respect to the Hartford policy. Whether Baseball's notice to Hartford was late or not given at all would have made no difference in the final analysis because, as is conceded, there was no coverage.

Thus, while the timeliness of notice may have been the dispositive issue in Baseball's action against the insurers on the insurance policies, it is superseded here, certainly with respect to the Hartford policy, by Baseball's claim that Marsh failed to notify it of the personal injury exclusion or to procure replacement coverage. A broker who agrees to place insurance for a customer must exercise reasonable diligence to do so and if unable to make such a placement must timely notify the customer

to afford it the opportunity to procure the insurance elsewhere (*Murphy v Kuhn*, 90 NY2d 266, 270; *MacDonald v Carpenter & Pelton*, 31 AD2d 952, 953.)

While, concededly, in a malpractice action against a broker for exposing the client to an uninsured loss, the broker ultimately "stands in the shoes of the insurer as concerns liability to the insured" (*Macon v Arnlie Realty Co.*, 207 AD2d 268, 270; *see, Chase Manhattan Bank v Each Individual Underwriter Bound to Lloyd's Policy No. 790/004 A89005*, 258 AD2d 1, 4), it does not necessarily follow that the issues as to the respective liability of each stand in the same rank of critical importance. Thus, it was error to isolate the notice issue for a separate trial since it was not the dispositive issue.

In any event, after directing a hearing on the notice issue, the court described the two-day September 2000 proceeding as a hearing "in aid of" determining Baseball's motion for partial summary judgment and, alternatively, a hearing "in aid of" Baseball's motion to dismiss the notice defense. While a court may order that an issue of fact raised on a motion be separately tried by the court or a referee (CPLR 2218), if the issue, as here, is triable of right by a jury, the court must give the parties an opportunity to demand a jury trial of such issue. (*Id.*)

The court never afforded Baseball such opportunity. In fact, in response to Baseball's assertion at the commencement of the hearing of its nonwaiver of a jury trial, the court, overlooking CPLR 2218, stated: "You make a motion for summary judgment, you open up a panoply of tools that the court has, and one of them is a hearing in aid of a motion so that what essentially happens is you end up with a non-jury trial that you may have wanted to go to the jury." Even if the hearing be considered as the immediate trial of an issue presented on a motion for summary judgment (*see,* CPLR 3212 [c]), although no motion for summary judgment was pending, plaintiff would be entitled to a trial by jury on the issue of notice, as provided for both by CPLR 3212 (c) and 2218. Also, it should be noted, at the outset of the two-day hearing, the court told Baseball's attorney, "In any event, I think it is probably going to be more of a legal than a factual issue. Otherwise, I wouldn't set it down for a non-jury hearing."

Since, as noted, Baseball was never afforded the opportunity to request a jury and, in fact, had reason to believe that the motion court would not make factual findings, there is no basis for the court's finding that Baseball waived its right to a jury. In opposing the motion for a separate trial on the issue of no-

tice, Baseball made clear its position that the issues of Marsh's liability for the lack of coverage and the giving of notice were not severable and should be tried together on the merits. It filed a legal memorandum before the hearing, noting the preservation of its right to a jury trial on those issues. And, although Baseball could have filed a note of issue, even though the court failed in its responsibility to afford it the opportunity to do so, it had a right to rely on the court's assurance that the issue being tried was a legal, rather than factual, one.

In making its determination to grant summary judgment to Marsh on the notice issue, as well as on the issue of Marsh's alleged failure to seek replacement coverage after Hartford issued its endorsement excluding personal injury coverage, the motion court relied on the factual findings it made as a result of the September 2000 hearing. The most notable of these, at least on the notice issue, was its finding that the alleged December 1992/early January 1993 conversation between White and Quinn never took place. The resolution of this issue is exclusively a matter for the trier of the fact, in this case, a jury, if Baseball's procedural rights are to be recognized. What is involved is an issue of credibility, which may not be resolved by the court to reach a determination on a motion for summary judgment. (*Capelin Assoc. v Globe Mfg. Corp.*, 34 NY2d 338, 341.)

On this point, the motion court's conclusion that Baseball would not have given timely notice even if the Hartford policy had covered the Piazza claim is belied by the explicit testimony of White and Baseball's general counsel, Mr. Ostertag. Both testified that if the Hartford policy provided personal injury coverage, Baseball would have timely notified the insurers of the Piazza lawsuit. On a motion for summary judgment, the nonmoving party is entitled to all reasonable inferences in its favor. (*Rodriguez v Parkchester S. Condominium*, 178 AD2d 231, 231-232.)

With respect to the Twin City policy, White testified that his mistaken conclusion that the policy did not provide personal injury coverage was directly attributable to Hartford's deletion of that coverage. It was his belief "that if you did not have coverage of this type on the primary policy, then the umbrella policy would not pick up that coverage." It would not be at all unreasonable for the ultimate trier of fact herein, a jury, to credit that explanation. In fact, Ms. Quinn, for whose insurance expertise Baseball retained Marsh, testified that she had the same understanding, that is, "that the umbrella policy follows the primary policy."

In any event, White's misinterpretation of the scope of Twin City's coverage is not dispositive of Baseball's claim that Marsh failed to advise it properly as to its notice obligations. If White, as he claims, did, in fact notify Quinn on receipt of the Piazza summons and complaint, Marsh, at a minimum, had an obligation to alert Baseball of its need to notify Twin City of the lawsuit. An insured has a right to look to the expertise of its broker with respect to insurance matters. (*See, e.g., Bell v O'Leary*, 744 F2d 1370, 1373.) And, it is no answer for the broker to argue, as an insurer might, that the insured has an obligation to read the policy. (*See, e.g., Rotanelli v Madden*, 172 AD2d 815, 817, *lv denied* 79 NY2d 754.) It is precisely to perform this service as well as others that the insured pays a commission to the broker. While an insured's failure to read or understand the policy or to comply with its requirements may give rise to a defense of comparative negligence in a malpractice suit against the broker, the insured's conduct does not, as the motion court held, bar such an action.

On the issue of Marsh's negligence in the placement of insurance, the motion court ruled, as a matter of law, that Marsh could not have procured replacement coverage for Baseball after Hartford excluded coverage for personal injury. This was not even a ground asserted in support of Marsh's summary judgment motion, which was premised on the court's prior ruling, after the evidentiary hearing, that, as a matter of law, Marsh "did not contribute in any way to Baseball's failure to give timely notice." A motion for summary judgment "on one claim or defense does not provide a basis for searching the record and granting summary judgment on an unrelated claim or defense." (*Sadkin v Raskin & Rappoport*, 271 AD2d 272, 273.) It was error for the court to search the record and grant summary judgment on an issue not raised by the motion, particularly one as to which the evidence had not yet been fully developed, discovery having been prematurely terminated by the motion.

In any event, the issue of Marsh's negligence in failing to procure replacement coverage could not have been decided as a matter of law. Nor do the court's findings on this issue find support in the hearing testimony. Quinn's testimony that she was not "aware of any companies" that would provide replacement coverage has little or no probative value, given her concession that, because of an oversight, she made no effort to secure the coverage. Furthermore, it is inconsistent with the evidence that two of Baseball's three previous policies and

seven of its previous 11 had included such coverage. Moreover, at the expiration of the Hartford policy, Quinn was able to replace it with a policy that included personal injury coverage and, as the record discloses, personal injury coverage is part of the standard general liability policy.

In light of the foregoing, all of the motion court's factual and legal findings are vacated.

We have examined the other points raised and find that they are without merit.

Accordingly, the judgment of the Supreme Court, New York County (Charles Ramos, J.), entered September 17, 2001, dismissing the complaint, and bringing up for review an order of the same court and Justice, entered on or about December 1, 2000, which granted defendant's motion for a separate trial on the issue of notice, an order of the same court and Justice, entered December 26, 2000, which denied plaintiffs' motion to strike certain defenses and an order of the same court and Justice, entered August 21, 2001, which, inter alia, granted defendant's motion for summary judgment, should be reversed, on the law, with costs and disbursements, the complaint reinstated, and the matter remanded for further proceedings before a different Justice. Appeals from the aforesaid orders entered December 1, 2000, December 26, 2000 and August 21, 2001 should be dismissed, without costs and disbursements, as subsumed in the appeal from the ensuing judgment.

ROSENBERGER, RUBIN and FRIEDMAN, JJ., concur.

Judgment, Supreme Court, New York County, entered September 17, 2001, reversed, on the law, with costs and disbursements, the complaint reinstated, and the matter remanded for further proceedings before a different justice, and appeals from orders, same court, entered on or about December 1, 2000, December 26, 2000 and August 21, 2001, dismissed, without costs and disbursements, as subsumed in the appeal from the ensuing judgment.