■ New Hampshire Insurance Company et al., Appellants, v MF Global, Inc., Respondent. [970 NYS2d 16]—

---

Order, Supreme Court, New York County (Bernard J. Fried, J.), entered October 5, 2010, which denied plaintiffs' motion for summary judgment declaring that they are not obligated under their fidelity bonds to cover defendant's loss sustained as a result of certain trading activity, and, upon a search of the record, granted summary judgment to defendant, unanimously modified, on the law, to vacate the grant of summary judgment to defendant, to grant defendant partial summary judgment to the extent of declaring that defendant sustained a direct financial loss under the fidelity bonds, and otherwise affirmed, without costs. Appeal from order, same court and Justice, entered March 25, 2011, which, to the extent appealable, denied plaintiffs' motion for renewal, unanimously dismissed, without costs, as academic.

Defendant MF Global, Inc. is a commodities futures broker and is subject to the regulatory rules and oversight of the various exchanges on which it executes trades, including the Chicago Mercantile Exchange (CME). The CME is registered with, and must comply with regulations of, the United States Commodities Futures Trading Commission (CFTC). MF Global is a clearing member of the CME, and is approved to clear trades through the CME Clearing House. To maintain the integrity of the market, the CME Clearing House and clearing members such as MF Global become effective counterparties on each trade placed. In other words, the CME Clearing House assumes the position of direct legal counterparty to MF Global on all futures contracts submitted by MF Global to the Clearing House.

In addition, as a clearing member, MF Global assumes complete responsibility for the financial obligations attendant to all trades and orders executed, and for all trading activity routed through its electronic trading systems. Thus, at the end of each trading day, or sometimes intraday, MF Global has to settle with the CME Clearing House for all losses on trades cleared through MF Global accounts, regardless of whether the customers initiating those trades are able to meet their payment obligations. This arrangement protects the market from risk of default by individual traders by transferring that risk to clearing members such as MF Global.

Plaintiff New Hampshire Insurance Company issued a fidelity bond to MF Global's predecessor company covering the policy

period from April 30, 2007 to April 30, 2008. The remaining plaintiffs are insurance companies that issued excess bonds to MF Global that incorporated the terms of the primary bond. In the bonds, plaintiffs agreed to indemnify MF Global for losses "sustained at any time for . . . any wrongful act committed by any employee . . . which is committed . . . with the intent to obtain financial gain for [the employee]" (emphasis omitted). "Loss" means "the direct financial loss sustained by [MF Global] as a result of any single act, single omission or single event, or a series of related or continuous acts, omissions or events." The bonds exclude coverage for "[i]ndirect or consequential loss." A "[w]rongful act," with respect to trading in commodities and futures, is defined as "any . . . dishonest . . . act committed with the intent to obtain improper financial gain for . . . an employee" (emphasis omitted).

Nonparty Evan Brent Dooley was a commodities broker associated with MF Global's Memphis, Tennessee office who was paid on a commission basis. During the evening of February 26, 2008, Dooley began trading commodities futures on the CME from his personal trading account using MF Global's electronic trading system. Dooley entered into a large number of "sell contracts," primarily for May wheat, and in doing so, exceeded his available margin credit. These "sell contracts" created an aggregate open position that would be liquidated when corresponding "buy contracts" were executed. If the price of May wheat decreased, the trades would be profitable, but if the price increased, a loss would ensue.

After trading resumed the next morning, the price of May wheat rose quickly, and Dooley liquidated his positions, sustaining a loss over $141 million. Because of the large amount, the CME Clearing House requested an intraday settlement to cover the loss. By midday on February 27, 2008, MF Global transferred approximately $150 million from its settlement bank to the CME Clearing House. MF Global recorded the $141 million loss on its books as a bad debt, and thereafter submitted a claim under the bonds. Plaintiffs denied coverage asserting, inter alia, that MF Global did not suffer a "direct financial loss" and that Dooley was not an "employee."

Plaintiffs brought this declaratory judgment action seeking a declaration that the bonds do not provide coverage for MF Global's loss. In moving for summary judgment, plaintiffs argued that MF Global did not sustain a "direct financial loss" under the terms of the bonds. MF Global opposed the motion, but did not cross-move for summary judgment. In an order entered October 5, 2010, the motion court denied plaintiffs' mo-

tion and, upon a search of the record, granted summary judgment to MF Global. Despite the fact that the parties did not brief the issue, the court concluded as a matter of law that Dooley was an "employee," as that term is defined in the bonds. The court subsequently denied plaintiffs' motion seeking, among other things, renewal. Plaintiffs now appeal.

The motion court properly concluded that MF Global's loss constituted a "direct financial loss." Although that term is not defined in the bonds, "[a] direct loss for insurance purposes has been analogized with proximate cause" (*Aetna Cas. & Sur. Co. v Kidder, Peabody & Co.*, 246 AD2d 202, 209 [1st Dept 1998], *lv denied* 93 NY2d 805 [1999]; *see Sorrentino v Allcity Ins. Co.*, 229 AD2d 481, 482 [2d Dept 1996] [using proximate cause as test for determining whether insurance loss was a direct loss]; *Granchelli v Travelers Ins. Co.*, 167 AD2d 839, 839 [4th Dept 1990] ["Direct loss is equivalent to proximate cause"]; *see generally Tonkin v California Ins. Co. of San Francisco, Inc.*, 294 NY 326, 329 [1945]).

Here, Dooley's conduct in making unauthorized trades beyond his margin was the direct and proximate cause of MF Global's loss.* Dooley's trading activity resulted in a near instantaneous shortfall for which MF Global, as a clearing member, was automatically and directly responsible. To ensure the integrity of the market, MF Global was obligated to promptly pay the CME Clearing House for the loss. In light of the immediacy of the payment, which was made only hours after the discovery of Dooley's trading, and the regulatory scheme upon which it was premised, MF Global's loss cannot be fairly viewed as simply satisfying a contractual liability to the CME. Contrary to plaintiffs' view, the payment to the CME is not a third-party loss for which MF Global is liable, but rather a direct loss to MF Global under the bonds.

Nor is there any record support for plaintiffs' claim that multiple intervening events resulted in a "protracted causal chain" between Dooley's trades and MF Global's loss. This case is distinguishable from *Aetna Cas. & Sur. Co. v Kidder, Peabody & Co.* (246 AD2d 202 [1998]). In *Aetna*, we addressed whether the fidelity bonds at issue covered litigation settlement payments made by Kidder Peabody to third-party investors who sustained losses as a result of insider trading schemes conducted by a Kidder Peabody employee (246 AD2d at 204-205). The settlement payments were made by Kidder Peabody years after

---

* On appeal, plaintiffs do not challenge the motion court's finding that Dooley committed a "wrongful act" with the intent to obtain a financial gain for himself.

the employee's misconduct (*id.* at 205-206). We concluded that the settlements were not direct losses because they were not the direct result of the employee's dishonest conduct (*id.* at 210). Instead, the losses stemmed from the employee's misconduct, which caused pricing irregularities in the stock, which led to losses to the investors, which led to litigation, which concluded in a settlement years after the employee's misconduct (*id.*).

No such attenuated chain exists here. Dooley's improper trading did not result in harm to a third party that subsequently sought redress from MF Global. Rather, the effect of Dooley's actions was immediate and direct—MF Global bore the responsibility for the losses occurring on its trading system, and made good on those losses within hours of the misconduct. Furthermore, unlike the bonds in *Aetna*, the bonds here did not have an exclusion for trading losses. Instead, they expressly provide coverage for losses associated with trading of commodities and futures. Accordingly, because MF Global suffered a direct financial loss under the fidelity bonds, it is entitled to a declaration on that issue in its favor.

The motion court acted improvidently, however, in searching the record and determining as a matter of law that Dooley was an "employee" under the bonds. A court deciding a motion for summary judgment is empowered to search the record and may, even in the absence of a cross motion, grant summary judgment to a nonmoving party (*Horst v Brown*, 72 AD3d 434, 437 [1st Dept 2010], *appeal dismissed* 15 NY3d 743 [2010]; CPLR 3212 [b]). Such power, however, is not boundless (*Dunham v Hilco Constr. Co.*, 89 NY2d 425, 429 [1996]), and the court's search of the record is limited to those causes of action or issues that are the subject of the motion (*Castlepoint Ins. Co. v Moore*, 105 AD3d 472, 474 [1st Dept 2013]; *Filannino v Triborough Bridge & Tunnel Auth.*, 34 AD3d 280, 281 [1st Dept 2006], *appeal dismissed* 9 NY3d 862 [2007]).

Contrary to the motion court's finding, plaintiffs did not relinquish their claim that Dooley is not an employee when they initially moved for summary judgment. Plaintiffs' motion raised only the issue of direct financial loss, a discrete defense to coverage, and did not address the separate coverage defense of Dooley's employment status. Nor did MF Global cross-move for summary judgment, or otherwise seek a declaration that Dooley was its employee. Moreover, discovery in this matter was not complete at the time the court searched the record. Thus, in this case, it was premature for the court to grant MF Global summary judgment on the employee issue (*see Baseball Off. of Commr. v Marsh & McLennan*, 295 AD2d 73, 82 [1st Dept 2002]).

In any event, neither the submissions on the original motion, nor on the motion to renew, establish as a matter of law that Dooley was MF Global's employee, as that term is defined in the bonds. As relevant here, the bonds define an employee as (i) a person under an implied contract of employment or services with the insured; (ii) a person working under the direct control and supervision of the insured; or (iii) a person who is paid by the insured under their payroll system. Notably, the bonds contain an exception to these categories stating that "[t]he term employee does not mean any independent broker . . . remunerated on a sales or commission basis unless specifically agreed by the insurer and endorsed to this bond" (emphasis omitted).

Issues of fact exist as to whether Dooley qualified as an employee under these definitions. There is no dispute that Dooley did not receive a regular salary from MF Global, but instead was paid on a commission basis. All payments to Dooley were recorded on a 1099 Form, not a W-2 (*see Belt v Girgis*, 55 AD3d 645, 646-647 [2d Dept 2008] [issuance of Form 1099 was proof that individual was an independent contractor]). Thus, there are factual questions as to whether Dooley fell within the "independent broker" exception contained in the bonds.

Even if this exception did not apply, it cannot be said as a matter of law that Dooley worked under the direct control and supervision of MF Global. No evidence was presented as to who, if anyone, supervised Dooley, or in what capacity. MF Global argues that pursuant to CFTC regulations, Dooley was an "associated person" of MF Global, and that MF Global was obligated to supervise his trading activity. Although this is evidence of the requisite control and supervision, it is insufficient to determine that issue as a matter of law.

Finally, any determination of Dooley's status as an employee is premature in the absence of further discovery. Because the motion court improperly decided this issue without notice to the parties, plaintiffs were deprived of the opportunity to conduct discovery (*see Baseball Off.*, 295 AD2d at 82 [error for court to grant summary judgment on issue as to which the evidence had not yet been fully developed]). Thus, principles of fairness dictate that plaintiffs should have discovery on matters underlying the employment question. Concur—Mazzarelli, J.P., Acosta, Renwick, Richter and Gische, JJ.