Scarpelli v Naderi (2022 NY Slip Op 04752)

Scarpelli v Naderi

2022 NY Slip Op 04752

Decided on July 27, 2022

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 27, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

BETSY BARROS, J.P.
CHERYL E. CHAMBERS
JOSEPH A. ZAYAS
DEBORAH A. DOWLING, JJ.

2018-13755 
2018-13756
2019-03679
 (Index No. 602495/17)

[*1]Robert Scarpelli, et al., respondents,
v
Ali A. Naderi, appellant, et al., nominal defendant.

The Katsorhis Law Firms, P.C., Flushing, NY (Jeffrey Paul Brodsky of counsel), for appellant.
Weiss Zarett Brofman Sonnenklar & Levy, P.C., New Hyde Park, NY (Floyd G. Grossman of counsel), for respondents.

DECISION & ORDER
In an action for a judgment declaring that the defendant Ali A. Naderi defaulted on 12 promissory notes and determining the rights and liabilities of the parties, the defendant Ali A. Naderi appeals from (1) an order of the Supreme Court, Nassau County (Vito M. DiStefano, J.), dated October 2, 2018, as amended by an order of the same court dated October 30, 2018, (2) the order dated October 30, 2018, and (3) a money judgment of the same court entered January 17, 2019. The order dated October 2, 2018, as amended by the order dated October 30, 2018, insofar as appealed from, granted those branches of the plaintiffs' motion which were for summary judgment on the complaint and dismissing the counterclaims of the defendant Ali A. Naderi, and directed an escrow agent to release certain stock certificates to the plaintiffs. The money judgment awarded the plaintiffs attorneys' fee in the principal sum of $42,445.07.
ORDERED that the appeal from the order dated October 30, 2018, is dismissed, as the defendant Ali A. Naderi is not aggrieved by that order (see CPLR 5511; Mixon v TBV, Inc., 76 AD3d 144, 156-157); and it is further,
ORDERED that the order dated October 2, 2018, as amended by the order dated October 30, 2018, is reversed insofar as appealed from, on the law, those branches of the plaintiffs' motion which were for summary judgment on the complaint and dismissing the counterclaims of the defendant Ali A. Naderi are denied, and the order dated October 30, 2018, and the money judgment entered January 17, 2019, are vacated; and it is further,
ORDERED that the appeal from the money judgment entered January 17, 2019, is dismissed as academic in light of this Court's determination on the appeal from the order dated October 2, 2018, as amended by the order dated October 30, 2018; and it is further,
ORDERED that one bill of costs is awarded to the defendant Ali N. Naderi.
The plaintiffs, Robert Scarpelli and Sylvester LaMarca, were both 50% owners of [*2]three businesses: Castle Collision Corp., Castle Collision of Queens, Inc., and Castle Collision of Suffolk, Inc. (hereinafter collectively the Castle Corporations). On February 11, 2015, the plaintiffs and the defendant Ali A. Naderi (hereinafter the defendant) entered into six written stock purchase agreements, whereby the plaintiffs sold to the defendant all of their respective shares in each of the Castle Corporations, for a total purchase price of $3.5 million. The defendant paid the plaintiffs the sum of $300,000, and executed 12 separate promissory notes, each dated February 11, 2015, for the remaining $3.2 million of the total purchase price. Each of the stock purchase agreements provided, inter alia, that as security for payment of the notes, the defendant was to execute and deliver to the plaintiffs at the time of closing a "Security Agreement," "creating a security interest against [the] stock transferred to the [defendant]." Each of the stock purchase agreements further provided that at closing the stock certificates reflecting the shares sold to the defendant would be "held in escrow as security for the payment of the Note," to be released to the defendant only upon "written confirmation by all parties of the full and complete payment of the Note," and that in the event of the defendant's default in payment on the notes, the escrow agent was "authorized to return the stock certificate to the Treasury of the Corporation for redemption." Also on February 11, 2015, the parties executed six separate escrow agreements, providing for "the escrow of Stock Certificates under the Purchase Agreement, as a source for security in the event of a default by Buyer of the Note." Each of the escrow agreements provided that "if the Buyer defaults in the payment of the Note herein, the Escrow Agent shall transfer to the Seller from the Escrow, the Stock Certificates, and Buyer shall forfeit any monies paid toward the note as liquidated damages, same not being considered a penalty." Also on February 11, 2015, the defendant "executed and delivered a Stock Power" with respect to each stock purchase agreement, assigning the shares which the defendant had purchased "back to" the plaintiffs. The corporate stock certificates and "Stock Power" were deposited in escrow pursuant to the corresponding escrow agreements, to be held pending the earlier of either full payment by the defendant or the defendant's default. Also on February 11, 2015, each of the plaintiffs entered into an "Employment Agreement" with Castle Collision Corp., executed by the defendant on behalf of the company, pursuant to which each plaintiff was hired as an employee of the company, to "perform such duties as General Manager," at a salary of $2,000 per week, until September 1, 2017, unless terminated earlier.
By 12 separate letters, each dated December 2, 2016, the plaintiffs informed the defendant that he was in default on the 12 promissory notes, and that he had 10 days to cure the defaults. Thereafter, by letters dated December 21, 2016, the plaintiffs informed Floyd G. Grossman of Dollinger, Gonski & Grossman, the escrow agent for the transaction, that the defendant remained in default on all 12 notes, and asked Grossman to return the stock certificates to the plaintiffs.
On March 23, 2017, the plaintiffs commenced this action seeking, inter alia, a judgment declaring that the defendant was in default on all 12 notes and "determining the rights and liabilities of the parties" under each of the notes and the agreements, including, inter alia, "whether the corporate stock certificate[s] . . . should be returned to [the plaintiffs]," "whether [the plaintiffs] ha[ve] the right to retain all monies previously paid by [the defendant] in connection with the [the transactions]," and whether the plaintiffs are entitled to recover attorneys' fees. The plaintiffs annexed to the complaint the promissory notes and escrow agreements, but not the stock purchase agreements or employment agreements.
On or about June 5, 2017, the defendant interposed an amended verified answer. The defendant asserted various affirmative defenses, including that the plaintiffs had "breached the very contracts and/or agreements that are referenced in the complaint," "fraud and/or misrepresentation in the inducement," and "fraud and misrepresentation in performance of the contracts." The defendant also asserted four counterclaims.
The defendant's first counterclaim sought "rescission of all contracts and/or agreements between the plaintiffs . . . and the defendant in connection with the sale of the [Castle Corporations] to the defendant as well as rescission of . . . [the] employment contracts" between the defendant and the plaintiffs, and upon such rescission, "the return of all monies paid to the plaintiffs . . . in connection with these transactions," based upon the plaintiffs' alleged material breaches of the parties' agreements. The defendant alleged that he had no adequate remedy at law. In support [*3]of this counterclaim, the defendant alleged, among other things, that the plaintiffs and the defendant had reached an understanding during negotiations that, upon the plaintiffs' sale of the Castle Corporations to the defendant, the plaintiffs "would no longer have any ownership interest" in the corporations, "would no longer have any affiliation with or role in operating" the corporations, and "would turn over and/or relinquish full control" of the corporations to the defendant. The defendant alleged that, nevertheless, the plaintiffs have "failed and/or refused to turn over full control" of the Castle Corporations to the defendant, and, among other things, continue to portray themselves to the public as the owners, refuse to turn over corporate books and records to the defendant, and closed a bank account opened by the defendant and diverted monies therein. The defendant further alleged that, by virtue of the plaintiffs' positions as general managers under their employment contracts, there existed a "fiduciary relationship" between the plaintiffs and the Castle Corporations. The defendant's second counterclaim sought an accounting, the third counterclaim sought damages for unjust enrichment, and the fourth counterclaim sought rescission of the parties' contracts based upon the theory that the plaintiffs fraudulently induced the defendant into entering into the contracts.
On July 20, 2017, the plaintiffs filed a reply to the defendant's counterclaims. On October 3, 2017, the defendant served interrogatories and a notice for discovery and inspection.
On October 25, 2017, the plaintiffs moved, inter alia, for summary judgment on the complaint and dismissing the defendant's counterclaims. The plaintiffs' motion specifically sought an order "determining that the defendant is in default under all of the Promissory Notes executed by defendant in favor of the plaintiffs, determining plaintiffs can retain monies paid by the defendant to the plaintiffs, and determining that the Escrow Agent can deliver the stock certificates held in escrow to the plaintiffs as a result of the defendant's defaults under the Promissory Notes." In the affirmation in support of the motion, the plaintiffs' counsel acknowledged that the defendant had served interrogatories and a demand for the production of documents. However, the plaintiffs' counsel contended that no discovery was required to establish the plaintiffs' causes of action. In support of their motion, they submitted the affidavits of both plaintiffs, who each stated that the defendant owed them the total sum of $2,839,541.48. The plaintiffs stated that the defendant defaulted on the notes by failing to make the payments due on June 1, 2015, and all payments due thereafter. The plaintiffs further submitted the checks that the defendant had paid toward the notes. The plaintiffs also submitted the defendant's bank statement, reflecting that he did not have sufficient funds to continue making payments on the notes. In addition, the plaintiffs submitted a copy of the pleadings, including the amended answer verified by the defendant. In the attorney affirmation in support of the plaintiffs' motion, counsel further contended that the plaintiffs were entitled to dismissal of the defendant's affirmative defenses and counterclaims because they were "without merit." With respect to the counterclaims for fraud and rescission, the plaintiffs argued that such counterclaims should be dismissed because they were the same as "[the defendant's] breach-of-contract [sic] claim" and, in any event, "there was no fraud." The plaintiffs' counsel's affirmation did not directly address the defendant's counterclaims for an accounting or to recover damages for unjust enrichment.
The defendant opposed the plaintiffs' motion, contending that the notes which are the focus of the plaintiffs' motion do not stand alone, but are contingent on the parties' compliance with the contracts and agreements they entered. The defendant argued, through counsel, that the "notes are so intertwined with the stock purchase agreements . . . that they cannot be treated separately." The defendant further argued that the plaintiffs' request for judgment as a matter of law on the issue of the defendant's default on the notes must be denied, because there were questions of fact as to whether the defendant received consideration for the purchase he made, and questions of fact regarding the defendant's counterclaims for rescission of the contract. The defendant also argued that summary judgment was premature. The defendant submitted an affidavit, in which he did not deny failing to make the required payments on the notes, but reiterated the allegations set forth in the amended verified answer regarding the plaintiffs' purported refusal to relinquish control of the Castle Corporations. The defendant also submitted copies of the stock purchase agreements and employment agreements. The plaintiffs submitted a reply in further support of their motion.
In an order dated October 2, 2018, as amended by an order dated October 30, 2018, [*4]the Supreme Court, inter alia, granted those branches of the plaintiffs' motion which were for summary judgment on the complaint and dismissing the defendant's counterclaims, and directed the escrow agent to transfer the stock certificates to the plaintiffs. In a money judgment entered January 17, 2019, the court awarded the plaintiffs attorneys' fees in the principal sum of $42,445.07. The defendant appeals.
The Supreme Court erred in granting that branch of the plaintiffs' motion which was for summary judgment dismissing the defendant's counterclaims. "[A] party seeking summary judgment bears the initial burden of demonstrating its prima facie entitlement to the requested relief," and this rule applies "equally to summary judgment motions directed to counterclaims" (Agulnick v Agulnick, 191 AD3d 12, 16). Here, the "plaintiff[s], as the moving part[ies] seeking to dismiss the counterclaim[s], ha[d] the burden in the first instance of presenting evidentiary facts showing that defendant does not have a meritorious cause of action" (Kasinski v Questel, 99 AD2d 396, 398). The plaintiffs failed to meet this burden, and it was improper for the court to rely upon arguments not raised by the plaintiffs, in making its determination to grant that branch of the plaintiffs' motion which was for summary judgment dismissing the defendant's counterclaims (see Quizhpe v Luvin Constr., 70 AD3d 912, 914; Baseball Off. of Comr. v Marsh & McLennan, 295 AD2d 73).
The Supreme Court also erred in granting that branch of the plaintiffs' motion which was for summary judgment on the complaint. As the court correctly noted, this is not an action to enforce payment of a promissory note, but rather for a judgment declaring the rights and liabilities of the parties under various agreements, and, in effect, for specific performance of contracts. Thus, the cases relied upon by the plaintiffs are inapposite (see e.g. New York Commercial Bank v J. Realty F Rockaway, Ltd., 108 AD3d 756; Lugli v Johnston, 78 AD3d 1133, 1135). The evidence of the defendant's default offered with the plaintiffs' motion was insufficient, standing alone, to demonstrate the plaintiffs' entitlement to judgment as a matter of law on their causes of action asserted in the complaint, all of which are for equitable relief (see generally Sokoloff v Harriman Estates Dev. Corp., 96 NY2d 409, 415; Tiffany Tower Condominium, LLC v Insurance Co. of the Greater N.Y., 164 AD3d 860, 863).
Moreover, the plaintiffs failed to meet their prima facie burden of demonstrating their entitlement to a judgment declaring that the defendant defaulted on the subject notes, because the evidence they proffered with their own motion, including the escrow agreements entered into by the parties and the defendant's amended verified answer, revealed triable issues of fact as to whether the defendant received valid consideration for the promissory notes (see American Realty Corp. of NY v Sukhu, 90 AD3d 792, 793; Samet v Binson, 79 AD3d 1005), and whether the notes are inextricably intertwined with the agreements which the defendant's counterclaims seek to rescind (see Jason J. Weindorf, CPA, P.C. v Wightman, 133 AD3d 822, 822; Oseff v Scotti, 130 AD3d 797, 801).
BARROS, J.P., CHAMBERS, ZAYAS and DOWLING, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court